# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE CATTLE ANTITRUST LITIGATION** | Case No. 0:19-cv-1222 (JRT/HB) |
| *This document relates to:*<br><br>ALL CASES | |
| KENNETH PETERSON, et al.<br><br>                       Plaintiffs,<br><br>v.<br><br>JBS USA FOOD COMPANY HOLDINGS, TYSON FOODS, INC., CARGILL, INC., and NATIONAL BEEF PACKING COMPANY,<br><br>                       Defendants. | Case No. 0:19-cv-1129 (JRT/HB) |

## JOINT STATUS REPORT AND LETTER BRIEF

The parties in *In re Cattle Antitrust Litigation* (19-cv-1222) ("*Cattle*") and *Peterson v. JBS USA Food Co. Holdings, et al.* (19-cv-1129) ("*Peterson*") have met and conferred to determine whether they are able to reach an agreement on: (1) the text of an ESI Protocol and Protective Order to govern both matters; and (2) whether and, if so, to what extent discovery should occur while Defendants' motions to dismiss are pending in both matters. In relation to the first issue, and as noted in the parties' Second Joint Status Reports (*Cattle*, ECF No. 129 and *Peterson*, ECF No. 84), the parties have agreed on many of the provisions in both the ESI Protocols and Protective Orders but have reached an impasse over a limited number of provisions. In relation to the second issue, the parties disagree over what, if any, further discovery steps should be taken pending the Court's resolution of the Defendants' motions to dismiss, which have been fully briefed.

The parties have agreed that these issues would most efficiently, and conveniently for the Court, be presented by way of a joint submission, rather than full motion briefing. The parties reserve all appeal rights under D. Minn. L.R. 72.2, as though formal motion papers had been filed. The Court's clerk confirmed the parties' proposed approach on February 13, 2020, and subsequently noted on February 19, 2020, that the Court would consider the March 3, 2020 hearing a case management conference to address the joint submission. The parties therefore submit this Joint Status Report and Letter Brief laying out the parties' positions on the current outstanding discovery disputes.

## I.     ESI PROTOCOL

The parties have met and conferred regarding the content of an ESI Protocol. The parties attach as **Exhibit A** a proposed ESI Protocol that sets forth the agreed upon provisions and indicates, with bracketed placeholders, particular provisions upon which the parties have been unable to reach agreement. **Exhibit B** to this joint letter brief sets out the parties' different proposals for each disputed provision.

### A.     <u>Time Frame for ESI Issue Resolution (Ex. A, § I.C.3)</u>:

*Plaintiffs' Position*: A constant source of delay during discovery is the inability of one party's ESI Liaison to receive a timely response from their counterpart to address the myriad of ESI issues that arise during litigation. Plaintiffs propose a time frame for acknowledging receipt of an ESI-related inquiry from another ESI Liaison (within 3 business days) and for responding substantively to the inquiry (within 10 business days). In Plaintiffs' view, one benefit of an ESI Protocol is to establish expectations and duties up front and to avoid unnecessary delay during the discovery process. But the process is not efficient if ESI-related inquiries go unresolved for long periods of time. Plaintiffs' proposal will help to ensure that ESI-related inquiries are investigated on a timely basis, which avoids delay and confusion.

Plaintiffs understand that not all inquiries are simple, and may require more time to investigate and formulate a response. Thus, Plaintiffs' proposal includes a protocol for particularly complex issues, wherein the ESI Liaison will provide a general explanation of the process necessary to answer the question and provide an estimated response date within 10 business days of the initial inquiry.

*Defendants' Position*: Defendants do not object to the creation of an ESI liaison or a process to streamline such discussions, but it is premature at this stage of the litigation to commit to a specific number of days allocated to resolve issues that may, or may not, arise about ESI issues if the parties start the electronic production of documents.

### B.    <u>Preservation (Ex. A, § I.H)</u>:

*Plaintiffs' Position*: Plaintiffs propose that the parties take reasonable steps to meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been, or should be, preserved in connection with this litigation. *Cattle* Plaintiffs believe that a preservation cut-off date is not appropriate where allegations in the complaint reflect ongoing conduct. While the *Peterson* Plaintiffs previously discussed a preservation cut-off date of April 26, 2019, they believe circumstances have changed in light of the USDA's August 28, 2019 announcement of its investigation into the beef packing sector.

It is important to discuss the scope of preservation regarding custodians and data sources and to agree upon a date range now so that the parties are clear about what data must be kept and so that each party is meeting their obligation to preserve all potentially relevant data. It is appropriate to address each party's preservation obligations now and to ensure that the parties agree on those obligations.

*Defendants' Position*: Plaintiffs seek a court order that would require Defendants to provide detailed discovery into their preservation efforts (much of which is protected by privilege) and to preview discovery efforts by, for example, negotiating with Plaintiffs about potential custodians. This is unnecessary. The Federal Rules of Civil Procedure already impose duties on the parties to preserve potentially relevant materials--and remedies for any dereliction. It also well-recognized that the parties are best placed to address their own preservation obligations. *See, e.g.*, The Sedona Principles, *Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1 at 120 (3d ed. 2018) ("Sedona Principles") ("the responding party—not the court or requesting party—is both tasked with making those [preservation-related] determinations and generally in a better position to make those decisions").

Preservation efforts also impose a significant burden on the parties' existing data sources and operations, and Defendants therefore seek to establish a cut-off for the need to

preserve data (the date the respective litigation was filed) to limit the duty to preserve material to the relevant time period at issue in these litigations. In fact, the *Peterson* plaintiffs had previously agreed to such a cutoff, as set forth in the parties' Joint Status Report, *see* ECF No. 50 at § D.2.ii ("The parties agree that the relevant preservation cutoff date that should apply to this case is the date the complaint was first filed (April 26, 2019)."). While Plaintiffs now contend that preservation should continue seemingly indefinitely given that they allege "ongoing conduct," Defendants' motions to dismiss explain why such alleged conduct adds nothing to the plausibility of the alleged conspiracy. Moreover, even incorrectly assuming that Defendants had conspired, it is implausible to suggest they would continue to do so after being subject to federal antitrust lawsuits. That is presumably why the *Peterson* plaintiffs previously agreed without hesitation to a preservation cutoff.

### C.   Continued Preservation of Native Copies of Documents (Ex. A, § II(C)(1)):

*Plaintiffs' Position*:  Plaintiffs propose a specific provision requiring parties to preserve and produce native files in a manner that does not materially alter or modify the file or the metadata.  Certain documents contain a high level of color graphs and charts, hidden data, notes, or other fields that require additional features to understand the document.  Because of this, the parties have agreed to a protocol to produce certain files as native items.  *See* Section II(C) of the draft ESI Protocol (Exhibit A).  In Plaintiffs' counsels' experience, the metadata for a document produced in a native file format is more subject to being altered or lost if not properly preserved and collected.  For this reason, having a specific protocol in place will help ensure that the metadata for native files is preserved and produced without material modifications or alterations.

*Defendants' Position*: The Federal Civil Rules address the parties' preservation obligations, and Plaintiffs' proposed language is both unnecessary and could be read to impose greater obligations on the parties than required by the law.

### D.   Parameters for Culling and Reviewing ESI and Paper Documents (Ex. A, § V):

*Plaintiffs' Position*:  Plaintiffs propose a protocol for culling and reviewing ESI and paper documents, which would include (among other items): time period limitations, document custodians, search methodology, use of Technology Assisted Review, structural data, and cellphone and personal data, contacts data, and social media data.

Plaintiffs' proposal includes specific parameters for search terms and other negotiations to provide the transparency that is necessary to have a cooperative search process.  Establishing a protocol early in the case would avoid unnecessary motion practice after the parties have devoted significant resources to discovery.  Plaintiffs' provision

provides for a good faith discussion of any such proposals in the context of a transparent and cooperative search process discussion. Identifying specific individuals and other sources will help to ensure proper preservation. Having a protocol to address custodians and sources will also help ensure that the parties are in agreement on the reasonable limits of productions. This protocol will minimize inefficiencies in the discovery process that have the potential to increase costs and hinder progress.

Defendants propose deferring entry of a protocol for ESI culling, search, and collection. Plaintiffs disagree and believe potential document custodians and other document sources are ripe for discussion.

*Defendants' Position*: While Defendants are willing to negotiate a process for identifying custodians, custodial sources, search terms, applicable date ranges, and the use of TAR at an appropriate time, this ESI Protocol is not the appropriate vehicle to do so. Plaintiffs' proposed language would require the parties to actively start engaging in the discovery process to negotiate all of these elements, and as discussed below, Defendants believe it is not in the interests of justice to launch a burdensome discovery effort prior to the Court's adjudication of the pending motions to dismiss.

Should the Court conclude that these discovery nuances should be addressed now, the parties should meet and confer about this section of the proposed protocol. Plaintiffs' proposal, as it stands, presumes to make these decisions already, including demanding discovery three years prior to the start of the class period; the method of negotiating and using search terms and TAR; and determining that cell phone and social media data is properly within the scope of discovery. Each of these issues requires further discussion, and perhaps motion practice, before being determined. Given that much of this needs to be decided in light of the contours of the case and specific discovery requests, however, Defendants reiterate that now is not the time to hammer out these details.

## II.     OUTSTANDING ISSUES RELATING TO PROTECTIVE ORDER

The parties met and conferred regarding a proposed Protective Order. The parties attach as **Exhibit C** a proposed Protective Order that sets forth the agreed upon provisions and indicates, with a bracketed placeholder, the one particular provision upon which the parties have been unable to reach agreement. **Exhibit D** to this joint letter-brief sets out the parties' different proposals for the disputed provision.

### A.     <u>Loss of Clawback (Ex. C, §§ 18(a)(3-4))</u>:

*Plaintiffs' Position*: Plaintiffs seek to establish clear guidelines and clear protocols to avoid unnecessary motion practice in the case. Plaintiffs propose a provision requiring that any clawback of a document be asserted within 14 days of the document's use. The clarity provided by Plaintiffs' proposal will help both parties understand their options, and

will provide a framework to deal with the problems that result when clawbacks are asserted months after a document is presented in a case. Plaintiffs' proposal addresses this practical reality and avoids a situation where a party could wait to claw back purportedly privileged documents until long after discovery has closed. This requirement does not place any undue burden on either party, has the benefit of bringing finality to the issue quickly, and reflects the principle, present in protective orders issued by this Court in other matters, that clawback issues should be addressed in as prompt a manner as practicable.

*Defendants' Position*: The parties have agreed on many detailed provisions governing when, how, and to what effect a party to these cases may "claw back" an inadvertently produced privileged or work-product-protected document. (*See* Ex. C, §§ 18(a)(1)-(2), 18(a)(4).a-e, 18(b), 18(c) (all agreed).) The parties' sole disagreement with respect to the claw back provisions concerns Plaintiffs' proposal to impose a strict 14-day time limit on a party's ability to request to claw back an inadvertently produced document that has been used in a deposition, expert report, or court filing in this action. Such a rigid approach, which sets an arbitrary deadline after which a party may not even *attempt* to protect its inadvertent disclosure of privileged material from waiver, is unnecessary, inconsistent with the federal rules, and could work an injustice.

Federal Rule of Evidence 502(b), which the parties have explicitly incorporated into the proposed Protective Order, already requires a party seeking a claw back to "promptly" take reasonable steps to rectify the error. (*See* Ex. C, § 18(a)(4).b.) Plaintiffs' proposed deadline is therefore not only unnecessary, but it is also inconsistent with the Federal Rules of Evidence, which were intended to remain "flexible enough to accommodate" the consideration of a variety of factors in determining whether inadvertent disclosure is a waiver. Fed. R. Evid. 502, Adv. Comm. Notes Explanatory Note (Rev. 11/28/2007). Those factors include "the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness." *Id.*

Under Defendants' proposal, unlike Plaintiffs', the Court could consider all the facts and factors, including the "overriding issue of fairness," in deciding whether a waiver should be recognized or the claw back allowed. *Id.*

Including Defendants' proposed § 18(a)(3).f would reinforce the applicability of Rule 502(b), which requires prompt and reasonable steps to rectify an inadvertent disclosure. Plaintiffs' proposed bright-line 14-day deadline is not necessary or appropriate.

## III.    PRE-MOTION-TO-DISMISS DISCOVERY

The parties have met and conferred regarding what further discovery steps are appropriate pending the Court's resolution of the Defendants' pending motions to dismiss. All parties agree that full discovery should not commence until after the Court rules on these motions, but disagree as to what, if any, further steps should be taken beyond agreeing

to an ESI Protocol and Protective Order.  Plaintiffs' proposed order is attached as **Exhibit E**.  Defendants' proposed order is attached as **Exhibit F**.

*Plaintiffs' Position*:

Plaintiffs propose the parties, except JBS S.A., engage in the following limited discovery in both cases during the pendency of Defendants' motions to dismiss, details of which are reflected in the Proposed Order at Exhibit E:

1. *Rule 26*: Parties exchange Rule 26(a) disclosures, participate in a Rule 26(f) conference, submit their Rule 26(f) report, and appear for a Rule 16 pretrial conference.

2. *Past productions and transaction data*: Defendants produce certain documents and communications previously supplied to regulators; Defendants produce transaction reports previously supplied to the USDA; *Cattle* Plaintiffs produce records of fed cattle sales and live cattle transactions; and *Peterson* Plaintiffs produce records of beef purchases.

3. *Initial Rule 34 requests*: *Cattle* and *Peterson* Plaintiffs serve up to thirty Rule 34 requests each, on which the parties will meet and confer after Defendants provide written objections.

4. *Other disclosures*: Parties exchange organization charts, document retention and technology use policies, and information relating to their email systems, data sources, and inaccessible data.

*Cattle* Plaintiffs proposed on June 25, 2019, that the *Cattle* parties take such steps. *Cattle* Defendants, citing proportionality concerns, responded on July 24, 2019, that they were willing to agree to portions of Items 1 and 4.  *Cattle* Plaintiffs asked Defendants to clarify their objections to the other proposed steps.  *Cattle* Defendants did not respond directly to *Cattle* Plaintiffs' request.  On August 15, 2019, Defendants communicated to *Cattle* and *Peterson* Plaintiffs that they were unwilling to take any discovery steps beyond agreeing to the ESI Protocol and Protective Order in light of Chief Judge Tunheim's motion to dismiss decision in *In re Pork Antitrust Litigation* ("*Pork*"), Civil No. 18-1776 (JRT/LIB), 2019 WL 3752497 (D. Minn. Aug. 8, 2019).  Plaintiffs communicated their disagreement with Defendants' position.

*Plaintiffs' Proposed Approach Advances the Litigation Without Imposing Undue Burden on Defendants*

The *Cattle* and *Peterson* cases have been pending for nearly a year.  Neither case is subject to a mandatory stay of all discovery.  Oral argument on Defendants' motions to dismiss is not until June 8, 2020.  The limited discovery steps proposed by Plaintiffs serve the interest of advancing the litigation efficiently in accordance with Rule 1.

Defendants' opposition amounts to an inappropriate, de-facto stay of discovery. Stays of discovery are granted only upon a showing of "good cause." *Wells Fargo Ins. Servs. USA, Inc. v. Kyle King & Sherman Ins. Agency, Inc.*, No. 15-CV-4378 (PJS/HB), 2016 WL 6892108, at *3 (D. Minn. July 29, 2016). "Courts use a balancing test to determine whether good cause exists, weighing the moving party's potential burden against the opposing party's interest in the discovery at issue." *Id.*

There are six reasons why the Court should adopt Plaintiffs' approach. First, as to Item 1, the parties have made progress on a number of issues that go into a Rule 26(f) report, including the Protective Order and ESI Protocol. The parties can use the time available now to meet and confer on the remaining issues so they can submit formal Rule 26(f) reports, and prepare and attend a Rule 16 conference. Requiring the parties to exchange Rule 26(a) disclosures will facilitate those meet and confers and the parties' written discovery requests (including, Item 3 above). Given the length of time the cases have been pending, if the parties work towards holding a Rule 16 conference on July 10, 2020, as Plaintiffs propose, then they will be in a position to move the cases forward efficiently after the Court's decision on Defendants' motions to dismiss.

Second, the initial steps proposed by Plaintiffs are commonly ordered in cases such as these, notwithstanding courts' acceptance that *full* discovery in antitrust matters can be expensive. *See e.g.*, Transcript, *In re Broiler Chicken Antitrust Litigation*, No. 16-cv-8637, ECF. No. 336 at 12:6-8 (N.D. Ill., Mar. 2, 2017) ("[T]here are discovery-related tasks that can and should proceed while the motions to dismiss are being briefed and under advisement.") (attached as Exhibit G); Transcript, *In re GSE Bonds Litigation*, No. 1:19-cv-1704, ECF No. 86 (S.D.N.Y., Apr. 3, 2019) (setting full discovery and trial schedule before motions to dismiss were filed) (attached as Exhibit H); Order, *In re: Pre-Filled Propane Tank Antitrust Litigation*, No. 4:14-md-2567, ("*Propane Tank*") ECF No. 2 (W.D. Mo., Oct. 22, 2014) (ordering an initial scheduling hearing and submission of joint discovery plan prior to filing of motions to dismiss) (attached as Exhibit I); Minute Entry, *In re Resistors Antitrust Litig.*, No. 3:15-cv-03820, ECF No. 112 (N.D. Cal. Feb. 2, 2016) (attached as Exhibit J); Order, *In re Liquid Aluminum Sulfate Antitrust Litig.,* No. 16-md-2687, ECF No. 209 (D.N.J. July 5, 2016) (attached as Exhibit K); *see also* Scheduling the Initial Conference, Ann. Manual Complex Lit. § 11.11 (4th ed.). Indeed, Plaintiffs' proposed order follows much of the pre-motion to dismiss discovery this Court found reasonable in *Pork*. *Pork*, ECF Nos. 220 (Transcript), 289 (Order), 290 (Order) (attached as Exhibit L). Given the time that has already lapsed in these cases, it is appropriate to proceed with Plaintiffs' proposed steps.

Third, Defendants cannot show "particular facts or circumstances that make responding to discovery in this case unusually burdensome or prejudicial beyond the usual case of this nature." *TE Connectivity Networks, Inc. v. All Sys. Broadband, Inc.*, No. 13-cv-1356, 2013 WL 4487505, at *2 (D. Minn. Aug. 20, 2013) ("[T]he mere filing of a

motion to dismiss the complaint does not constitute 'good cause' for the issuance of a discovery stay."); *accord E. Coast Test Prep, LLC v. Allnurses.com, Inc.*, No. 15-cv-3705, 2016 WL 6997117, at *3-4 (D. Minn. Feb. 22, 2016) (collecting cases). This is especially true here, where Plaintiffs have proposed reasonable steps to be taken at this stage of the litigation.

The proposed disclosure of past documentary and transaction productions, reflected in Item 2 above, will not impose any significant burden on Defendants. *See, e.g., United States v. Boston Sci. Corp.*, No. 11-cv-2453, 2019 WL 4052327, *1, *3 (D. Minn. Aug. 28, 2019) (affirming magistrate order compelling production of presentations made to government); *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, No. 08-6324, 2010 WL 11470364, *4-5 (D. Minn. Nov. 3, 2010) (ordering production of documents previously produced to government agencies despite burden assertion); *In re Milk Prods. Antitrust Litig.*, 84 F. Supp. 2d 1016, 1026-29 (D. Minn. 1997) (same); *see also* Order, *In re Diisocyanates Antitrust Litig.*, No. 2:18-mc-01001, ECF No. 149 (W.D. Pa. Jan. 15, 2019) (requiring defendants' production of documents previously produced to U.S. DOJ prior to plaintiffs filing amended complaint) (attached as Exhibit M); *In re Platinum & Palladium Commodities Litig.*, No. 1:10-cv-03617, 2010 WL 11578945, at *1 (S.D.N.Y. Nov. 30, 2010) (request that defendants produce "approximately 250,000 pages" of records previously produced to CFTC "not overly burdensome").

Re-producing these documents now does not require Defendants to undertake any substantial new collection exercise. *See* Transcript of Proceedings re: Conference, *Anastasio et al v. Total Power North Am., Inc. et al*, 1:15-cv-9689, ECF No. 78 (S.D.N.Y. Jul 27, 2016) (rejecting defendants' claims that producing past regulatory productions was disproportionate, finding such an order imposed "very little" burden or cost) (attached as Exhibit N). These documents have already been collected, reviewed, and produced by Defendants. Producing those same documents now will advance the cases without undue burden on the parties. *See id.*

Fourth, Plaintiffs will be prejudiced by a further stay of discovery. This dispute has been pending for nearly a year. Any further delay to proceeding with the initial discovery proposed by Plaintiffs increases the risk of lost evidence, fading memories, and delayed justice. *See E. Coast Test Prep*, 2016 WL 6997117, at *4. Further, the parties cannot engage in appropriate discussions about document preservation and custodians in a vacuum. *See* Transcript of Motions Hearing and Status Conference, *Pork*, ECF No. 220 ("Pork November Transcript"), 47:1–14 (Exhibit L). In particular, they require information regarding the other side's ESI systems, email systems, record keeping, organization structure, and employees' roles and records in order to have confidence that the steps taken by the parties will adequately preserve relevant evidence.

Fifth, while it is not necessary for this Court to "take a peek" at the merits of Defendants' motions to dismiss to decide the present application, even a cursory glance at

Plaintiffs' Complaints show that neither is "facially frivolous or clearly without merit." *TE Connectivity*, 2013 WL 4487505, at *2; *accord Catholic Mut. Relief Soc'y of Am. v. Arrowood Indem. Co.*, No. 17-CV-3141, 2018 WL 9787272, at *6 (D. Minn. Apr. 23, 2018) (in denying stay of discovery, Magistrate Brisbois agreed with plaintiffs that "granting the present Motion would require the undersigned, in essence, to issue an advisory opinion on the merits of the Motion to Dismiss that is pending before Chief Judge Tunheim"). *Cattle* Plaintiffs not only offer direct evidence of Defendants' anticompetitive agreement to suppress fed cattle prices from two confidential witnesses, but also plead facts to corroborate those witnesses' statements. *Cattle*, ECF No. 92, ¶¶81–86, 89, 94. *Cattle* Plaintiffs' Complaint is also replete with economic analysis demonstrating that Defendants artificially suppressed fed cattle prices, and did so through periodic slaughter restraint and other coordinated procurement practices. The same is true for the *Peterson* Complaint. *See, e.g.*, *Peterson*, ECF No. 114, ¶¶17, 69–84.

Sixth, the *Cattle* Plaintiffs make allegations of ongoing antitrust violations and harm. *See* Second Amended Consolidated Complaint, *Cattle*, ECF. No. 125, ¶¶178–182 (describing August 9, 2019 fire at Tyson's Holcomb, Kansas packing plant, resulting price cuts on cattle and price increases on beef, and subsequent government investigation). Because *Cattle* Plaintiffs maintain direct and ongoing commercial relationships with these Defendants, who are, for many Class members, their only marketing outlet, it is imperative that this lawsuit is resolved expeditiously. And with respect to the *Peterson* case, consumers are harmed every single day they pay a supracompetitive price for beef.

Defendants essentially offer five reasons in favor of their requested stay of discovery. First, prior to their enumerated list, they note that the Court has not set a Rule 16 pretrial conference. That objection has no weight. The Court has a "broad discretion" to manage the "sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). Even ignoring that Plaintiffs' proposal asks for a Rule 16 pretrial conference and Defendants' ongoing refusal to participate in a Rule 26(f) conference, the Court has ample authority to order the limited discovery requested. *See, e.g., Strike 3 Holdings, LLC v. Doe*, 330 F.R.D. 552, 555–56 (D. Minn. 2019) (District Courts can order expedited discovery for a 'good cause').

Second, Defendants claim Plaintiffs' proposal would impose some unspecified burden upon them. That argument, however, is precluded by law. On August 5, 2019, Plaintiffs first asked Defendants to particularize the burden that would flow from Plaintiffs' proposed discovery requests. Defendants never responded, and fail even now to articulate a concrete burden they might suffer. Defendants' continued failure to articulate the specific burdens that would accompany Plaintiffs' proposal is fatal to their objection. *See Great Lakes Gas Transmission Ltd. P'ship v. Essar Steels Minnesota, LLC*, No. CV 09-3037, 2012 WL 12895231, at *2 (D. Minn. July 5, 2012) ("[T]o establish good cause, the moving party may not rely upon 'stereotyped and conclusory statements,' but must present a 'particular and specific demonstration of fact,' as to why a protective order should issue.")

(quoting Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* §2035 (1994)). This lack of specificity lays bare Defendants' main argument for a stay: that the *Pork* complaint was previously dismissed. The fact that a different case was dismissed without prejudice in response to a different set of motions does not necessitate a stay absent a showing of burden in *this case*. Further, as noted above, courts routinely reject burden arguments in response to requests that defendants re-produce prior regulatory productions.

Third, in addressing the merits of Plaintiffs' claims, Defendants ask the Court to offer an "advisory opinion on the merits of the Motion to Dismiss." *Catholic Mut.*, 2018 WL 9787272, at *8. But it remains "inappropriate . . . to try to . . . sneak a peek at [the motions to dismiss] or purport to guess at how they might come out" in determining whether discovery should proceed. Pork November Transcript, at 44:20-22; *see also Great Lakes*, at *3 ("As such, in the absence of a clear and unmistakable result, this Court does not believe the issuance of a protective order should depend upon its prediction of how the District Judge will decide defendants' dispositive motion.") (internal citation omitted).

Even if an analysis of the motions to dismiss were appropriate, a stay still would not be warranted. Defendants assert that "the *Cattle* and *Peterson* complaints contain many allegations similar to those Judge Tunheim found fatally deficient in the *Pork* complaint," yet even a cursory review of the Complaints undermines that assertion. Unlike *Pork*, the *Cattle* and *Peterson* Complaints support their allegation of conspiracy with evidence of actual agreement, not merely parallel conduct. Specifically, as noted above, Plaintiffs plead direct evidence in the form of eye-witness accounts of collusive agreements to periodically curtail slaughter volume, and to engage in and enforce bidding practices designed to reduce competition for cash cattle. *Pork* plaintiffs offered no direct evidence.

In addition**,** *Cattle* Plaintiffs have supplied Defendant-specific information that the Court found was lacking in *Pork*. For example, the Complaint details when Defendants reduced their slaughter volume and provides yearly slaughter volume data on a Defendant-by-Defendant basis. It also demonstrates that Defendants' slaughter trends both individually and collectively differed from the trends of the non-defendant packers and cannot be explained by supply and demand or other industry conditions. The *Peterson* Complaint contains similar allegations.

Finally, unlike *Dufrene v. ConAgra Foods, Inc*., No. 15-cv-3796, 2016 WL 10651947, (D. Minn. Apr. 7, 2016) (plaintiff alleged to be precluded from prosecuting claim due to bankruptcy) and *In re CenturyLink Sales Practices & Secs. Litig.*, No. 17-md-2795, 2018 WL 2122869, (D. Minn. May 8, 2018) (mandatory arbitration agreements), both cited repeatedly by Defendants, the pending motions to dismiss here do not center upon legal defenses. *See Hachette Distribution, Inc. v. Hudson Cty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991) (stay pending resolution of motion to dismiss should only be granted if "the issues before the Court are purely questions of law that are potentially dispositive") (cited with approval in *Great Lakes*, 2012 WL 12895231, at *3). Rather,

Defendants' central argument here in support of dismissal is that Plaintiffs failed to plead sufficient facts to plausibly infer the alleged agreement – despite Plaintiffs offering direct evidence of the agreement, rendering inference unnecessary.

Defendants' fourth point, that Plaintiffs will suffer no prejudice if a stay is imposed, also misses the mark. As noted above, unlike many cartel cases where the alleged anticompetitive conduct has long since ceased, Plaintiffs allege a serious, continuing harm. Defendants enjoyed record profits across 2019 and into the first quarter of 2020, while Producer Plaintiffs were forced to sell their cattle at prices well below their break-even points. Indeed, in September 2019, as Defendants enjoyed margins in excess of $400 per head, Producer Plaintiffs suffered $200 per head losses. *Cattle*, ECF No. 125, ¶183.

Plaintiffs' attempts to rectify that harm have been frustrated by Defendants' efforts to delay the Court's consideration of the present issues. Defendants stalled the preparation of the Second Joint Status Report in *Cattle*, which requested the Court's guidance as to the current issues, for over a month after Plaintiffs sent Defendants the initial draft. *Cattle*, ECF No. 129. Defendants also slow-walked negotiations as to the form of the present briefing, which Plaintiffs initiated on January 6, 2020. And while *Cattle* Plaintiffs have substantively amended once, pursuant to their Rule 15 rights, their other amendment merely changed the Complaint's caption in response to Defendants' request.

Defendants' final argument, that a stay will preserve judicial resources, is also unpersuasive. As noted above, the Rules specifically contemplate discovery beginning during the pendency of a motion to dismiss. If successful, Defendants' requested stay would turn that basic structure on its head. Further, Defendants' assertion is incorrect. Nothing in Plaintiffs' proposal requires the regular oversight of the Court. Additionally, imposing a complete stay fails to balance the Court and parties' countervailing interest in progressing the present controversy efficiently under Rule 1, and the Court's particular interest of managing the cases before it. *See Catholic Mut.*, 2018 WL 9787272, at *7.

For these reasons, Defendants have not met their burden of establishing the need for their proposed stay and Plaintiffs' Proposed Order should be granted. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need.").

<u>Defendants' Position</u>: As Judge Tunheim recognized in his decision granting the motion to dismiss in the *Pork* litigation, "the Court is unwilling to force Defendants into significant and costly discovery without plausible allegations that they engaged in the conduct alleged." *Pork*, 2019 WL 3752497, at *9 (D. Minn. Aug. 8, 2019). Proceeding any further with discovery before the Court rules on the multiple motions to dismiss does not serve the interests of justice, unduly burdens the parties, and would generate unnecessary work for the Court. Defendants respectfully request a stay of any further discovery.

As an initial matter, the Court, with good reason, has not yet set a Rule 16 pretrial conference. Accordingly, Plaintiffs' demands for discovery are premature. But beyond that procedural problem, there are substantive reasons why the Court should stay discovery, including by continuing to defer the Rule 16 conference and to allow the parties to wait to confer over a Rule 26(f) report until the scope of these actions (if they survive at all) is determined. This approach allows any discussions about the timing and scope of discovery to be more meaningful and appropriately tailored. The Court has "broad discretion" to grant a discovery stay. *Frable v. Synchrony Bank*, 215 F. Supp. 3d 818, 821 (D. Minn. 2016) (Bowbeer, Mag. J.) ("A district court has broad discretion to stay proceedings when appropriate to control its docket."). Courts in this Circuit consider a variety of factors in evaluating motions to stay discovery. Discovery stays are appropriate and routine where, as here, (i) a pending motion that would resolve all or substantially all of the case "appears to have substantial grounds," (ii) defendants would face substantial burden absent a stay, (iii) the plaintiffs would suffer little to no prejudice as a result of the stay, and (iv) a stay would serve the court's interests. *Dufrene*, 2016 WL 10651947, at *2; *In re CenturyLink*, 2018 WL 2122869, at *1; *Kellogg v. Watts Guerra, LLP*, 2018 WL 3432048, at *1 (D. Minn. July 16, 2018). Each factor weighs in favor of a stay here.

**First**, substantial grounds exist to dismiss the Complaints in their entirety. While courts regularly evaluate the merits of a motion to dismiss to determine whether a stay of discovery is warranted, it is even more appropriate for the Court to "take a peek" at the pending motions here because of what transpired in the *Pork* litigation. On August 8, 2019, Judge Tunheim granted the defendants' motion to dismiss, dismissing the *Pork* complaint in its entirety. The *Cattle* and *Peterson* complaints contain many allegations similar to those Judge Tunheim found fatally deficient in the *Pork* complaint. The outcome is likely to be the same here.

Defendants' fully briefed joint and individual motions to dismiss explain in more detail why the Complaints here should be dismissed—including drawing comparisons to the grounds for dismissal in *Pork*. In the *Cattle* case, the Plaintiffs attempt to rely on parallel conduct and "plus factors" to try to cobble together an antitrust claim that the Defendants conspired to suppress cattle prices. Plaintiffs attempt to allege that the Defendants acted in parallel by reducing slaughter capacity and slaughter volume to push down cattle prices. But the plant closings supposedly to reduce capacity took place at various times, almost all before the conspiracy allegedly began, and were not uniform across the Defendants. Worse yet, slaughter volumes actually ***increased*** during the alleged conspiracy period. And each Defendant did so at different times and to different extents, without acting in parallel. Even if Plaintiffs had established parallel conduct, the "plus factors" they point to do not create an inference of a plausible antitrust conspiracy.

JBS S.A., moreover, has moved to dismiss for lack of personal jurisdiction and ineffective service of process. Plaintiffs have indicated that they do not seek discovery from JBS S.A. beyond the ESI Protocol and Protective Order. Both of those documents

preserve defenses including the lack of personal jurisdiction and ineffective service of process.

Plaintiffs' complaints also contain allegations regarding anonymous witness statements that supposedly establish the existence of an agreement among the Defendants to suppress cattle prices. But the allegations do not contain sufficient detail or particularity to make it clear that it is even plausible that the witnesses would even have such knowledge. But even crediting these statements, the witnesses' statements are so vague and contradictory that they do not establish a plausible antitrust conspiracy.

Each Defendant individually points to additional reasons why the *Cattle* Plaintiffs fail to allege an antitrust conspiracy against them. The Plaintiffs ignore distinctions between parent and subsidiary companies, point to innocuous public statements as supposed evidence of concealment of a conspiracy, and make allegations that company Defendants took actions completely inconsistent with Plaintiffs' conspiracy theory.

The Complaint in *Peterson* suffers from similar deficiencies (many paragraphs are copied verbatim from *Cattle*). And because the *Peterson* plaintiffs are indirect purchasers of beef and not sellers of cattle like in *Cattle*, they must go the extra step of plausibly alleging that this cattle purchasing conspiracy resulted in higher beef prices. They do not do so, instead admitting that retail beef prices *fell* by 6% during the alleged conspiracy. For that reason, the *Peterson* plaintiffs do not even have standing to bring a claim.

Courts find that a pending motion to dismiss weighs in favor of a stay of discovery where the motion merely "appears to have substantial grounds" and is "not unfounded in the law." *In re CenturyLink*, 2018 WL 2122869, at *1. It need not even have a "greater than fifty percent probability" of success. *Dufrene*, 2016 WL 10651947, at *3. Defendants' motions here far exceed that standard.

**Second**, Defendants will face a substantial burden in discovery, even if the discovery is the supposedly "limited" discovery Plaintiffs seek. It is universally recognized that that discovery in antitrust actions quickly becomes prohibitively costly and burdensome. And that burden falls almost exclusively on the defendants. For that reason, courts routinely stay discovery in complex antitrust cases, pending a motion to dismiss. *See In re Broiler Chicken Grower Litig.*, 2017 WL 3841912, at *6 (E.D. Okla. Sept. 1, 2017) ("In the context of this complex, putative class antitrust action with potentially thousands of claimants asserting claims of illicit conduct spanning a decade, a limited delay in discovery to resolve threshold issues raised at the outset of litigation will not only prevent potentially unnecessary expenses, it will also serve judicial economy."); *In re Wholesale Grocery Prod. Antitrust Litig.*, 2010 WL 11469883, at *3 (D. Minn. Mar. 3, 2010); *Propane Tank*, 2015 WL 11022887, at *5 (W.D. Mo. Feb. 24, 2015). In fact, concerns about the burdens of discovery particular to antitrust litigation animated the Supreme Court's ruling in the seminal federal pleading standards case of *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544 (2007). *See In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2127577, at *4-6 (N.D. Cal. July 24, 2007) (remarking that "to allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of *Twombly*" given the burdens peculiar to antitrust discovery).

In addition, while Defendants are confident that their motions to dismiss should be granted in full in both *Cattle* and *Peterson*, even a partial dismissal could mean that the matters at issue are much narrower. For example, the *Cattle* case does not challenge the prices charged for beef, while the *Peterson* case does. Thus, the scope of discovery into beef prices would be substantially narrower if the *Peterson* case is dismissed and only the *Cattle* case survives.

The course of events in the *Pork* litigation is instructive. On February 7, 2019, this Court granted the defendants' motion to stay discovery in part, but required the defendants to take a number of preliminary discovery steps requested by plaintiffs—such as working towards agreement on an ESI protocol, serving objections and meeting and conferring on document requests, meeting and conferring on potential document custodians, meeting and conferring on custodial and non-custodian sources of information (including electronic systems and physical storage locations), and developing a search methodology for review and production of documents previously produced to the government. The parties expended tremendous time and money to address and negotiate all of these issues. As this Court knows, there were at least five status conferences devoted to discovery issues, with nine joint status reports discussing the same. Outside of the courtroom, the various defendants spent significant time addressing these issues with their clients, engaged in dozens of meet-and-confers and engaged in extensive letter-writing campaigns to refine their respective decisions. Yet this costly discovery may ultimately prove unnecessary given the Court granted the defendants' motion to dismiss. The Court then cancelled all scheduled status conferences and deadlines. *See* Order, *Pork*, ECF No. 367 (Aug. 16, 2019). The plaintiffs ended up amending their complaint once again, but new motions to dismiss remain pending in that case. In other words, more than a year has passed since this Court ordered discovery to proceed in part in *Pork*, and the plaintiffs still do not have a complaint that has survived a motion to dismiss, even in part. As explained above, Plaintiffs' complaints here are likely to suffer the same fate. Given the experience of the parties in *Pork*, discovery should be stayed here.

***Third***, in contrast to the tremendous costs borne by Defendants absent a stay of discovery, Plaintiffs will not be prejudiced by such a stay. Defendants have all confirmed they are complying with their preservation obligations. Defendants also have already expended significant time and resources negotiating with the Plaintiffs regarding a protective order and ESI protocol for these cases. Only a few issues remain for those documents, and they are addressed above in this letter. After Defendants made their position clear no later than October 2019 that discovery should not proceed, Plaintiffs waited months to take any action. And any delay in getting to a resolution of the motions

to dismiss is attributable to the fact that Plaintiffs have delayed their own cases by amending their respective complaints once, waiting until Defendants had briefed their motions to dismiss, and then amending again.

**Fourth**, a stay will conserve judicial resources; proceeding with discovery will not. *See Dufrene*, 2016 WL 10651947, at *4 (concluding the balance of the equities and "in particular the conservation of resources" weighed in favor of a limited stay pending the resolution of the motion to dismiss). Especially where a motion to dismiss "has the potential to resolve all of the issues to which the currently pending discovery is relevant, this factor weighs in favor of granting the requested stay." *Id.* For these reasons, a stay of discovery would allow the Court to avoid expending resources conducting status conferences and mediating discovery disputes for an action that might ultimately be dismissed.

The preliminary discovery that Plaintiffs propose is far from "limited." The very fact that it takes Plaintiffs an entire 10-page proposed order to spell out exactly what they are proposing is ample evidence of that. *See* Exhibit E. While Plaintiffs portray the discovery tasks as presenting very little burden, the closer examination below shows that they would be time-consuming and burdensome for Defendants to undertake. This is unwarranted, given the factors listed above.

**"Past productions and transaction data."** What Plaintiffs refer to as "certain documents and communications previously supplied to regulators" and "transaction reports previously supplied to the USDA" consists of an expansive number of requests. Contrary to Plaintiffs' representations, they are not simply requesting a few "off the shelf" productions to government regulators that Defendants can easily produce once again. Plaintiffs' requests include documents produced to the USDA, U.S. Government Accountability Office ("GAO"), and the Grain Inspection, Packers and Stockyards Administration with respect to several specific investigations. *See* Exhibit E, at § 2(a), (b), (c). They also request any productions to the DOJ, CFTC, and Chicago Mercantile Exchange in response to *any* request from January 1, 2014 onward[1] relating to cattle, beef, or trading in live cattle contracts—and such a request could be anything, whether "oral or written" and whether the Defendants were required to respond or not. *Id.* at 4 n.2. And not just that, but Plaintiffs also seek *any communications* with any of those regulators or entities relating to those investigations or requests.

On top of that, Plaintiffs are requesting six years of daily and weekly transaction reports to the USDA. That amounts to thousands of pages of additional reports that each Defendant would have to locate, collect, review, and produce.

---

[1] Plaintiffs' proposed order says only "from January 1, 2014," but Defendants presume they mean "from January 1, 2014 to present."

This is beyond what the Court required in the *Pork* litigation. It is also far beyond most of the examples in the cases that Plaintiffs point to in their argument that production "will not impose any significant burden on Defendants." The *Boston Scientific*, *Minneapolis Firefighters*, and *In re Milk Products* cases all involved routine discovery requests and objections on the basis of overbreadth, relevance, privilege, Rule 408 protection, and other grounds. They did not involve stays of discovery pending motions to dismiss. And while the *In re Platinum* order was issued during the pendency of a motion to dismiss, it involved only a single request for information produced in response to a government civil investigative demand, not the laundry list of items Plaintiffs propose here.

*"**Initial Rule 34 requests.**"* These "initial" requests would include up to 30 document requests in each case—60 total. The fact that Plaintiffs caution that these 60 requests are only "initial" should be a reliable indicator of the scope of expansive discovery they envision for these cases. Furthermore, while Plaintiffs try to minimize the burden of proceeding with "just" document requests (without actual production) now, the costs to Defendants to engage in this process will undoubtedly still be significant. As some Defendants' experience in the *Pork* litigation shows, simply "meeting and conferring" regarding document requests (up to 60 in this instance) can result in endless telephone conferences, letter-writing campaigns, and numerous status conferences with the Court. Furthermore, Defendants cannot simply serve written objections and meet and confer in the abstract. Defendants' counsel would need to engage in an adequate internal investigation of their clients' documents, witnesses, and systems, just to be able to make reasonable, good faith objections to document requests (not knowing just yet what any of them might be). Notably, under Plaintiffs' proposed order, Defendants also get fewer than the standard 30 days to respond. *Compare* Fed. R. Civ. P. 34(b)(2) *and* Ex. E at § 3(b) (allowing Defendants only 21 days).

*"**Other disclosures.**"* What Plaintiffs call "other disclosures" consists of a slew of requests for information about Defendants' personnel, policies, and technology systems. In particular, the "organization charts" Plaintiffs seek would in fact require Defendants to recreate a large volume of historical records as to which personnel had which responsibilities at which time in the company. Instead of producing existing documents, it would require Defendants to create new documents and information, essentially answering detailed interrogatories about their internal operations. Again, such an endeavor would require an extensive investment of resources from both the Defendants' business personnel and legal counsel to investigate, prepare and produce.

Plaintiffs argue that much of this information is necessary "in order to have confidence that the steps taken by the parties will adequately preserve relevant evidence." But the Defendants themselves are in the best position to evaluate and carry out their preservation obligations. *See* Sedona Principles, at 120. Defendants have confirmed that they are doing what is required by law to preserve potentially relevant information. It is

not Plaintiffs' role to appoint themselves as *de facto* special masters to oversee Defendants' preservation efforts.  Yet that is the role they seem to envision for themselves.

Plaintiffs also slip into their "other disclosures" category a request for *all* of Defendants' "live cattle futures and options transactions" for a full six-year time period. This is clearly an attempt by the *Cattle* Plaintiffs to obtain additional information to bolster their bare-bones allegations of cattle futures and options manipulation.  As it stands, the *Cattle* Plaintiffs have alleged in conclusory fashion that Defendants manipulated the market, but admit that they do not really have the data to show it.  *See Cattle*, Second Am. Compl. ¶¶ 271–72, 276–79.  They are not entitled to open the floodgates of discovery simply to inform an inevitable third amended complaint once the present one is dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (filing a complaint "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *Twombly*, 550 U.S. at 563 n.8 ("[B]efore proceeding to discovery, a complaint must allege facts suggestive of illegal conduct.").

**"Rule 26."**  Plaintiffs' proposal that the parties hold a Rule 26 conference, submit a Rule 26(f) report, and conduct a Rule 16 conference with the Court goes beyond what the Court ordered in *Pork*.  Furthermore, Plaintiffs' proposal that the Court hold a Rule 16 conference only a few weeks after oral argument on the motions to dismiss is entirely unrealistic.

Defendants therefore respectfully request that the Court adopt Defendants' proposed order (Exhibit F) and stay any further discovery until the issuance of a final decision on Defendants' Motion to Dismiss.

Dated:  February 25, 2020

Respectfully Submitted,

**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**

*s/ Christopher M. Burke*
Christopher M. Burke (*pro hac vice*)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
Fax: 619-233-0508
cburke@scott-scott.com

Peter A. Barile III (*pro hac vice*)

*s/ Christopher R. Morris*
Lewis A. Remele, Jr., Reg. No. 90724
Christopher R. Morris, Reg. No. 230613
**BASSFORD REMELE, PA**
100 South 5th Street, Suite 1500
Minneapolis, MN 55402
(612) 333-3000
lremele@bassford.com
cmorris@bassford.com

William F. Hargens
Mark F. Enenbach

SCOTT+SCOTT
ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue
17th Floor
New York, NY 10169
Tel.: 212-223-6444
Fax: 212-223-6334
pbarile@scott-scott.com

David R. Scott (*pro hac vice*)
Amanda F. Lawrence (*pro hac vice*)
Michael P. Srodoski (Bar No. 0398250)
SCOTT+SCOTT
ATTORNEYS AT LAW LLP
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Tel.:  860-537-5537
Fax:  860-537-4432
david.scott@scott-scott.com
alawrence@scott-scott.com
msrodoski@scott-scott.com

Anthony F. Fata (*pro hac vice*)
Jennifer W. Sprengel (*pro hac vice*)
Christopher P.T. Tourek (*pro hac vice*)
Brian P. O'Connell (*pro hac vice*)
CAFFERTY CLOBES
MERIWETHER &
SPRENGEL LLP
150 S. Wacker
Suite 3000
Chicago, IL 60606
Tel.: 312-782-4882
Fax: 312-782-4485
afata@caffertyclobes.com
jsprengel@caffertyclobes.com
ctourek@caffertyclobes.com
boconnell@caffertyclobes.com

Ellen Meriwether (*pro hac vice*)

Patrick E. Brookhouser, Jr.
Matthew G. Munro
MCGRATH NORTH MULLIN &
KRATZ, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102
(402) 341-3070
whargens@mcgrathnorth.com
menenbach@mcgrathnorth.com
pbrookhouser@mcgrathnorth.com
mmunro@mcgrathnorth.com
*Admitted Pro Hac Vice*

*Counsel for Defendants JBS USA Food
Company, JBS Packerland, Inc. and Swift
Beef Company, and Special Appearance
for Defendant JBS S.A. in the <u>Cattle
Action</u>*

<u>s/ Donald G. Heeman</u>
Donald G. Heeman, Reg. No. 0286023
Jessica J. Nelson, Reg. No. 0347358
Randi J. Winter, Reg. No. 0391354
SPENCER FANE
150 South Fifth St.
Suite 1900
Minneapolis, MN 55402
(612) 268-7000
dheeman@spencerfane.com
jnelson@spencerfane.com
rwinter@spencerfane.com

Stephen Neuwirth
Sami H. Rashid
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue
New York, NY 10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com
samirashid@quinnemanuel.com
*Admitted Pro Hac Vice*

**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
205 N. Monroe St.
Media, PA 19063
Tel.: 215-864-2800
Fax: 215-864-2810
emeriwether@caffertyclobes.com
*Interim Co-Lead Counsel for the Cattle Plaintiffs*


K. Craig Wildfang (Bar No. 0117043)
Thomas J. Undlin (Bar No. 0183751)
Stacey P. Slaughter (Bar No. 0296971)
**ROBINS KAPLAN LLP**
800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402
Tel: 612-349-8500
Fax: 612-339-4181
kcwildfang@robinskaplan.com
tundlin@robinskaplan.com
sslaughter@robinskaplan.com


Hollis Salzman
Kellie Lerner
**ROBINS KAPLAN LLP**
399 Park Avenue
Suite 3600
New York, NY 10022
Tel: 212-980-7400
Fax: 212-980-7499
hsalzman@robinskaplan.com
klerner@robinskaplan.com


*Liaison Counsel for the Cattle Plaintiffs*


s/ *Shana E. Scarlett*
Shana E. Scarlett (*pro hac vice*)
Rio S. Pierce (*pro hac vice*)

Ethan Glass, Reg. No. 0316490
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8265
ethanglass@quinnemanuel.com


*Counsel for Defendant JBS USA Food Company Holdings in the Peterson Action*


s/ *David P. Graham*
David P. Graham, Reg. No. 0185462
**DYKEMA GOSSETT, PLLC**
4000 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
(612) 486-1521
dgraham@dykema.com


Jon B. Jacobs
Jeremy C. Keeney
**PERKINS COIE LLP**
700 13th Street, NW, Suite 600
Washington, DC 20005
(202) 654-1758
jbjacobs@perkinscoie.com
jkeeney@perkinscoie.com
*Admitted Pro Hac Vice*


Susan E. Foster
Ulrike B. Connelly
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
(206) 359-8846
sfoster@perkinscoie.com
uconnelly@perkinscoie.com
*Admitted Pro Hac Vice*

**HAGENS BERMAN SOBOL
SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com

Steve W. Berman (*pro hac vice*)
Breanna Van Engelen (*pro hac vice*)
**HAGENS BERMAN SOBOL
SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com

s/ Brian D. Clark
W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Elizabeth R. Odette (MN #0340698)
Arielle S. Wagner (MN #0398332)
Stephanie A. Chen (MN #0400032)
**LOCKRIDGE GRINDAL NAUEN
P.L.L.P.**
100 Washington Avenue South, Suite
2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
wjbruckner@locklaw.com
erodette@locklaw.com
bdclark@locklaw.com
aswagner@locklaw.com
sachen@locklaw.com

*Interim Co-Lead Class Counsel for
Plaintiffs in the* Peterson *Action*

*Counsel for Defendants Tyson Foods, Inc.
and Tyson Fresh Meats, Inc. in the* Cattle
*Action and for Tyson Foods, Inc. in the*
Peterson *Action*

s/ Holley C. M. Horrell
Kathryn N. Hibbard, Reg. No. 0387155
X. Kevin Zhao, Reg. No. 0391302
Holley C. M. Horrell, Reg. No. 0399636
**GREENE ESPEL PLLP**
222 South 9th Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
khibbard@greeneespel.com
kzhao@greeneespel.com
hhorrell@greeneespel.com

Mark W. Ryan
Michael E. Lackey, Jr.
Nicole A. Saharsky
**MAYER BROWN LLP**
1999 K Street, NW
Washington, DC 20009
(202) 263-3338
mryan@mayerbrown.com
mlackey@mayerbrown.com
nsaharsky@mayerbrown.com
*Admitted Pro Hac Vice*

*Counsel for Defendants Cargill,
Incorporated and Cargill Meat Solutions
Corporation in the* Cattle *Action and for
Cargill, Incorporated in the* Peterson
*Action*

s/ Benjamin L. Ellison
Andrew M. Luger, Reg. No. 0189261
Benjamin L. Ellison, Reg. No. 0392777
**JONES DAY**
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
(612) 217-8862
aluger@jonesday.com

bellison@jonesday.com

Julia E. McEvoy
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
(202) 879-3867
jmcevoy@jonesday.com
*Admitted Pro Hac Vice*

Paula W. Render
**JONES DAY**
77 West Wacker, Suite 3500
Chicago, Illinois 60601-1692
(312) 269-1555
prender@jonesday.com
*Admitted Pro Hac Vice*

*Counsel for Defendant National Beef Packing Company, LLC in the Cattle and Peterson Actions*