# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE CATTLE ANTITRUST LITIGATION** | Case No. 0:19-cv-1222 (JRT/HB) |
| *This document relates to:* <br> ALL CASES | |
| KENNETH PETERSON, et al. <br><br> Plaintiffs, <br><br> v. <br><br> JBS USA FOOD COMPANY HOLDINGS, TYSON FOODS, INC., CARGILL, INC., and NATIONAL BEEF PACKING COMPANY, <br><br> Defendants. | Case No. 0:19-cv-1129 (JRT/HB) |

## JOINT LETTER BRIEF

The parties in *In Re Cattle Antitrust Litigation* (19-cv-1222) ("*Cattle*") and *Peterson v. JBS USA Food Co. Holdings, et al.* (19-cv-1129) ("*Peterson*") have met and conferred as required by the Order on Discovery Pending Resolution of Motions to Dismiss (*Cattle*, ECF No. 196 and *Peterson*, ECF No. 150) to determine whether they are able to reach an agreement on the text of Section V to be included as part of the Order Regarding Production of Electronically Stored Information and Paper Documents ("ESI Protocol") (*Cattle*, ECF No. 198 and *Peterson*, ECF No. 152) to govern both matters. While the parties have agreed on many of the provisions to be included in Section V of the ESI Protocol, they have reached an impasse over one provision. As requested by the Court, that remaining issue is hereby presented by way of a joint letter brief. The parties reserve all appeal rights under D. Minn. L.R. 72.2, as though formal motion papers had been filed. The parties request a ruling on the below dispute and propose that the Court issue an amended Order Regarding Production of Electronically Stored Information and Paper Documents that incorporates the revised Section V.

## I.     EXHIBITS

The parties attach as **Exhibit A** a proposed Section V (to replace the existing Section V in *Peterson*, ECF No. 198, the ESI Protocol) that indicates, with a bracketed placeholder, the particular provision upon which the parties have been unable to reach agreement. **Exhibit B** to this joint letter brief sets out the parties' different proposals for the disputed provision.

### A.     <u>Disputed Provision: Document Custodians and Sources: Initial Discussions About Scope of Document Discovery (Ex. B)</u>

*Plaintiffs' Position*: All parties agree they must have some time period to work from in order for the negotiations regarding Rule 34 objections and offers of production to be meaningful. Plaintiffs propose that the following presumptive date ranges shall apply: (a) January 1, 2012 to June 30, 2020 for unstructured data; and (b) January 1, 2009 to June 30, 2020 for structured data, while reserving the right to seek documents through the present. Defendants seek a narrower January 1, 2014 to December 31, 2019 date range. Defendants' narrower presumptive time period raises concerns from a preservation standpoint, and also gives rise to a greater risk of delay and complication once the motions have been decided.

First, there is some real prejudice to Plaintiffs if the narrower time period is adopted. It is important that all parties are clear about what data sources are being preserved, and what custodians are potentially at issue in the case. Plaintiffs want to ensure that data sources are being preserved for the entire period for which they will ultimately seek discovery—otherwise relevant documents and data could be lost. The longer parties wait to identify and preserve relevant sources, the more likely it is that information will be overlooked or destroyed. Moreover, adopting Plaintiffs' proposed period does not unduly burden the parties in circumstances where the collection, processing, review, and production of documents has been deferred until after the ruling on Defendants' motions to dismiss.

Second, it will be more difficult to expand the parties' custodian negotiations to encompass a wider timeframe after decisions on the motions to dismiss are entered than it would be to cut the presumptive timeframe back. Practically speaking, it is much more difficult to go back and add additional relevant custodians and identify additional document and data sources down the line than it is to ensure that those custodians and sources are being identified and preserved upfront.

A 2012 start to the date range is appropriate for unstructured data, and Plaintiffs do not think this will change after a ruling on the motions to dismiss. Acts that occur prior to the proposed class period are relevant to the events that occurred during the proposed class period. *See* Fed. R. Evid. 401 (relevant evidence admissible if "it has any tendency to make a fact more or less probable"). The complaints in both actions describe various events

2

during this period that inform Plaintiffs' class period allegations. Plaintiffs seek 2009 as the start period for structured data to ensure that the parties and their prospective experts have access to a sufficient 'clean' period of data to conduct the types of before, during and after comparator analyses commonly deployed in antitrust litigation such as this. For similar reasons, Plaintiffs propose a later end date to the time period, and are reserving the right to seek documents through the present—particularly given the ongoing government investigations by the DOJ, the USDA and others that relate to Plaintiffs' allegations of an ongoing price-fixing conspiracy.[1] Plaintiffs remain willing to discuss with the Defendants whether a narrower time-frame is appropriate for any particular requests that they or the Defendants may serve pursuant to Court's prior order, and note that such negotiations are specifically provided for in the parties' proposed Section V.

Defendants' attempts to dismiss the relevance of the pre-class period years is belied by their own reliance on events from that period in their moving papers in support of their argument that there is an obvious alternative explanation for the claimed cattle and beef price abnormalities. *See*, *e.g.*, *In re Cattle*, Defendants Mem. Of Law in Support of Joint Motion to Dismiss [ECF No. 140] ("[W]hen fed cattle prices hit a historic peak in late 2014, driven in large part by reduced supply (caused by a significant drought [between 2011-2013]), the market responded as expected. Producers increased the supply of fed cattle, and cattle prices fell accordingly" and "these [plant closures] had an obvious lawful explanation. . . there was a 'shortage of fed cattle' in 2013 and 2014 caused by a significant drought"). Given that the parties are at issue as to the impact of these events is, the parties will necessarily have to provide discovery of matters that goes to their import.

Defendants also point to the fact that Attachment 1 of the Court's April 14, 2020 order adopted Plaintiffs' suggestion that the preliminary exchange of information required by that Attachment be limited to the period between January 1, 2014 and December 31, 2019. However, neither Plaintiffs nor the Court addressed whether that date range would be appropriate to frame the parties' negotiations of the document requests authorized in the body of the Court's order, which are necessarily broader in scope than the initial disclosures provided for in Attachment 1. In fact, as Defendants note, the Court specifically declined Defendants' request for a preservation cut-off date that reflected their current narrower date proposals. *See In re Cattle* Dkt. 198 at Section I(H).

For these reasons, Plaintiffs ask the Court to enter Plaintiffs' proposal regarding the broader presumptive date ranges.

---

[1] David McLaughlin, Bloomberg, "Meatpacking Giants Face U.S. Antitrust Inquiry Amid Shutdowns" (May 7, 2020), available: https://www.bloomberg.com/news/articles/2020-05-08/meatpacking-giants-face-u-s-antitrust-inquiry-amid-shutdowns ("The U.S. Justice Department is investigating meatpacking companies for possible antitrust violations . . . The antitrust probe is in the early stages and began before the coronavirus outbreak spread across the U.S. . . . President Donald Trump on Wednesday said he would ask the Justice Department to investigate. His remark came after attorneys general from 11 states called for the Justice Department to investigate the industry for possible antitrust infractions and said they were ready to work with federal enforcers.").

*Defendants' Position*: The parties' proposal for this section lays out a concrete process by which the parties would disclose and negotiate the scope of document custodians/sources and date ranges based on the service of responses to any initial Rule 34 requests, starting with a presumptive date range to be potentially expanded in the context of particular requests.

The Court has already said that it is premature to decide the appropriate date ranges to apply to discovery in this matter. *See Peterson*, ECF No. 198 at Section H. But it also said that as an initial matter, a date range of January 1, 2014 to December 31, 2019, was reasonable to apply here. *See Peterson*, ECF No. 196 at Attachment 1 (setting initial date range to govern documents produced to satisfy Attachment 1 disclosures). Defendants propose that, at this early juncture in the case, that same January 1, 2014 to December 31, 2019 date range becomes the presumptive date range to frame discovery negotiations, with any expansion of those date ranges to be negotiated separately in the context of specific requests for productions issued by the parties.

In contrast, Plaintiffs' proposed date ranges stretch *years* before the alleged class period starts and years before the alleged conspiracy began (January 1, 2015). *See Peterson* 2d Am. Compl. ¶ 5 ("Beginning in 2015, the beef market saw a marked change in pricing practices. Before 2015, the prices of cattle and beef moved in tandem. . . . *After 2015, and during the conspiracy*, this fundamental economic relationship was severed." (emphasis added)); ¶ 8 ("After the start of the anticompetitive activity in 2015 . . . .") [ECF No. 114]; *In Re Cattle* Am. Compl. ¶ 9 ("Packing Defendants used their market power and the relatively small cash cattle trade to their advantage and *embarked upon a conspiracy to depress fed cattle prices that began in 2015* and continues through to this day." (emphasis added)) [ECF No. 125]. Under Plaintiffs' proposal, the parties would then negotiate, with respect to particular requests for production, whether other time periods should apply. Plaintiffs' presumptive date ranges would require Defendants to review and produce materials from over a decade ago for every single category of documents Plaintiffs intend to request.

While there may be limited instances for which the Plaintiffs' proposed date ranges are appropriate in the context of this litigation, it is highly unlikely that that date range would be appropriate for *all* requests Plaintiffs will make. Defendants' proposed approach, on the other hand, would reasonably provide for precisely those types of RFP-specific evaluations.

Without guidance on the pending motions to dismiss and divorced from particular requests for information, Plaintiffs instead seek a burdensome, broad presumptive minimum range. Defendants' proposal allows the parties to start discussions of when broader date ranges may be justified, prior to the adjudication of the motions to dismiss,

but requires the parties to have those negotiations in the context of discovery requests served.

Notably, the Parties agree that it is appropriate to reserve the right to renegotiate those date ranges to appropriately respond to the Court's decisions on the pending Motions to Dismiss, once filed. Moreover, the Court previously declined to pre-judge the merits of Defendants' dismissal motions. *See Peterson*, ECF No. 198 at 8-9.

Plaintiffs conflate preservation efforts and discovery efforts. The Court has already ordered the Parties to meet and confer regarding the preservation efforts needed. And as already required by the Federal Rules, Defendants will take into consideration what materials may need to preserved based on the discovery requests served. In addition to this, Plaintiffs will be receiving organizational, systems, and retention information from Defendants—for the period January 1, 2014 to December 31, 2019—pursuant the Court's recent order. *See Peterson*, ECF No. 196, Attachment 1. It was this information that Plaintiffs previously highlighted to the Court as being needed to address preservation questions at this juncture of the litigation.[2]

However, at issue here is what materials will be processed and reviewed for *discovery*. Adopting Plaintiffs' presumptive date range, which stretches back to 2009, would enshrine into the case a default date range that is untethered to an alleged conspiracy beginning in 2015. *See Peterson* 2d Am. Compl. ¶¶ 5, 8 ("*After* the start of the anticompetitive activity *in 2015* . . . ." (emphasis added)) [ECF No. 114]; *In Re Cattle* Am. Compl. ¶ 9 (alleging that defendants "embarked upon a conspiracy to depress fed cattle prices that *began in 2015*" (emphasis added)) [ECF No. 125].

Moreover, the Court previously declined to pre-judge the merits of Defendants' dismissal motions. *See Peterson*, ECF No. 198 at 8-9. Ordering discovery that presumptively dates back as far as 2009—six years before the start of the alleged conspiracy—would require the Court to delve into the merits of the allegations while motions to dismiss are still pending in order to assess the proportionality of discovery from years before the start of the alleged conspiracy. Defendants' proposal strikes a better balance: a narrower date range, extending to a year before the alleged conspiracy began and past the filing of the complaints, with the parties agreeing to meet and confer in good faith about possible extensions of that date range based on specific requests. This allows the parties to balance, within the context of specific discovery requests, when the burden of an expanded date range is proportional to the needs of the case.

Dated: May 15, 2020

---

[2] *Peterson*, ECF No. 143 (Joint Status Report) at 8 (Plaintiffs maintaining that they "require information regarding the other side's ESI systems, email systems, record keeping, organization structure, and employees' roles and records in order to have confidence that the steps taken by the parties will adequately preserve relevant evidence.").

Respectfully Submitted,
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**

*s/ Christopher M. Burke*
Christopher M. Burke (*pro hac vice*)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
Fax: 619-233-0508
cburke@scott-scott.com

Peter A. Barile III (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue
17th Floor
New York, NY 10169
Tel.: 212-223-6444
Fax: 212-223-6334
pbarile@scott-scott.com

David R. Scott (*pro hac vice*)
Amanda F. Lawrence (*pro hac vice*)
Michael P. Srodoski (Bar No. 0398250)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Tel.:  860-537-5537
Fax:  860-537-4432
david.scott@scott-scott.com
alawrence@scott-scott.com
msrodoski@scott-scott.com

Anthony F. Fata (*pro hac vice*)
Jennifer W. Sprengel (*pro hac vice*)
Christopher P.T. Tourek (*pro hac vice*)
Brian P. O'Connell (*pro hac vice*)

s/ *Christopher R. Morris*
Lewis A. Remele, Jr., Reg. No. 90724
Christopher R. Morris, Reg. No. 230613
**BASSFORD REMELE, PA**
100 South 5th Street, Suite 1500
Minneapolis, MN 55402
(612) 333-3000
lremele@bassford.com
cmorris@bassford.com

William F. Hargens
Mark F. Enenbach
Patrick E. Brookhouser, Jr.
Matthew G. Munro
**MCGRATH NORTH MULLIN &**
**KRATZ, PC LLO**
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102
(402) 341-3070
whargens@mcgrathnorth.com
menenbach@mcgrathnorth.com
pbrookhouser@mcgrathnorth.com
mmunro@mcgrathnorth.com
*Admitted Pro Hac Vice*

*Counsel for Defendants JBS USA Food Company, JBS Packerland, Inc. and Swift Beef Company, and Special Appearance for Defendant JBS S.A. in the* Cattle *Action*

     */s Jessica J. Nelson*
Donald G. Heeman, Reg. No. 0286023
Jessica J. Nelson, Reg. No. 0347358
Randi J. Winter, Reg. No. 0391354
**SPENCER FANE**
150 South Fifth St.
Suite 1900
Minneapolis, MN 55402
(612) 268-7000
dheeman@spencerfane.com

6

| | |
|---|---|
| **CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP** <br> 150 S. Wacker <br> Suite 3000 <br> Chicago, IL 60606 <br> Tel.: 312-782-4882 <br> Fax: 312-782-4485 <br> afata@caffertyclobes.com <br> jsprengel@caffertyclobes.com <br> ctourek@caffertyclobes.com <br> boconnell@caffertyclobes.com <br><br> Ellen Meriwether (*pro hac vice*) <br> **CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP** <br> 205 N. Monroe St. <br> Media, PA 19063 <br> Tel.: 215-864-2800 <br> Fax: 215-864-2810 <br> emeriwether@caffertyclobes.com <br> *Interim Co-Lead Counsel for the Cattle Plaintiffs* | jnelson@spencerfane.com <br> rwinter@spencerfane.com <br><br> Stephen Neuwirth <br> Sami H. Rashid <br> **QUINN EMANUEL URQUHART & SULLIVAN LLP** <br> 51 Madison Avenue <br> New York, NY 10010 <br> (212) 849-7000 <br> stephenneuwirth@quinnemanuel.com <br> samirashid@quinnemanuel.com <br> *Admitted Pro Hac Vice* <br><br> Ethan Glass, Reg. No. 0316490 <br> **QUINN EMANUEL URQUHART & SULLIVAN LLP** <br> 1300 I Street NW, Suite 900 <br> Washington, D.C. 20005 <br> (202) 538-8265 <br> ethanglass@quinnemanuel.com <br><br> *Counsel for Defendant JBS USA Food Company Holdings in the* <u>Peterson</u> *Action* |
| K. Craig Wildfang (Bar No. 0117043) <br> Thomas J. Undlin (Bar No. 0183751) <br> Stacey P. Slaughter (Bar No. 0296971) <br> **ROBINS KAPLAN LLP** <br> 800 LaSalle Avenue <br> Suite 2800 <br> Minneapolis, MN 55402 <br> Tel: 612-349-8500 <br> Fax: 612-339-4181 <br> kcwildfang@robinskaplan.com <br> tundlin@robinskaplan.com <br> sslaughter@robinskaplan.com <br><br> Hollis Salzman <br> Kellie Lerner <br> **ROBINS KAPLAN LLP** <br> 399 Park Avenue <br> Suite 3600 | */s Ulrike B. Connelly* <br> David P. Graham, Reg. No. 0185462 <br> **DYKEMA GOSSETT, PLLC** <br> 4000 Wells Fargo Center <br> 90 South 7th Street <br> Minneapolis, MN 55402 <br> (612) 486-1521 <br> dgraham@dykema.com <br><br> Jon B. Jacobs <br> Jeremy C. Keeney <br> **PERKINS COIE LLP** <br> 700 13th Street, NW, Suite 600 <br> Washington, DC 20005 <br> (202) 654-1758 <br> jbjacobs@perkinscoie.com |

New York, NY 10022
Tel: 212-980-7400
Fax: 212-980-7499
hsalzman@robinskaplan.com
klerner@robinskaplan.com

*Liaison Counsel for the Cattle Plaintiffs*


s/ *Shana E. Scarlett*
Shana E. Scarlett (*pro hac vice*)
Rio S. Pierce (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com

Steve W. Berman (*pro hac vice*)
Breanna Van Engelen (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
breannav@hbsslaw.com


s/ *Brian D. Clark*
W. Joseph Bruckner (MN #0147758)
Brian D. Clark (MN #0390069)
Elizabeth R. Odette (MN #0340698)
Arielle S. Wagner (MN #0398332)
Stephanie A. Chen (MN #0400032)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

jkeeney@perkinscoie.com
*Admitted Pro Hac Vice*

Susan E. Foster
Ulrike B. Connelly
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
(206) 359-8846
sfoster@perkinscoie.com
uconnelly@perkinscoie.com
*Admitted Pro Hac Vice*

*Counsel for Defendants Tyson Foods, Inc. and Tyson Fresh Meats, Inc. in the <u>Cattle</u> Action and for Tyson Foods, Inc. in the <u>Peterson</u> Action*

/s *Holley C. M. Horrell*
Kathryn N. Hibbard, Reg. No. 0387155
X. Kevin Zhao, Reg. No. 0391302
Holley C. M. Horrell, Reg. No. 0399636
**GREENE ESPEL PLLP**
222 South 9th Street, Suite 2200
Minneapolis, MN 55402
(612) 373-0830
khibbard@greeneespel.com
kzhao@greeneespel.com
hhorrell@greeneespel.com

Mark W. Ryan
Michael E. Lackey, Jr.
Nicole A. Saharsky
**MAYER BROWN LLP**
1999 K Street, NW
Washington, DC 20009
(202) 263-3338
mryan@mayerbrown.com
mlackey@mayerbrown.com
nsaharsky@mayerbrown.com
*Admitted Pro Hac Vice*

100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
F: (612) 339-0981
wjbruckner@locklaw.com
erodette@locklaw.com
bdclark@locklaw.com
aswagner@locklaw.com
sachen@locklaw.com

*Interim Co-Lead Class Counsel for Plaintiffs in the Peterson Action*

*Counsel for Defendants Cargill, Incorporated and Cargill Meat Solutions Corporation in the Cattle Action and for Cargill, Incorporated in the Peterson Action*

/s *Benjamin L. Ellison*
Andrew M. Luger, Reg. No. 0189261
Benjamin L. Ellison, Reg. No. 0392777
**JONES DAY**
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
(612) 217-8862
aluger@jonesday.com
bellison@jonesday.com

Julia E. McEvoy
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
(202) 879-3867
jmcevoy@jonesday.com
*Admitted Pro Hac Vice*

Paula W. Render
**JONES DAY**
77 West Wacker, Suite 3500
Chicago, Illinois 60601-1692
(312) 269-1555
prender@jonesday.com
*Admitted Pro Hac Vice*

*Counsel for Defendant National Beef Packing Company, LLC in the Cattle and Peterson Actions*