**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE CATTLE ANTITRUST LITIGATION<br><br>This document relates to:<br>ALL CASES | Case No. 19-cv-1222 (JRT/HB)<br><br>**ORDER ON PLAINTIFFS' MOTION TO NARROWLY LIFT DISCOVERY STAY** |
| Kenneth Peterson, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>JBS USA Food Company Holdings, et al.,<br><br>                    Defendants. | Case No. 19-cv-1129 (JRT/HB) |

This matter is before the Court on the *In re Cattle* and *Peterson* Plaintiffs' Motion to Narrowly Lift the Discovery Stay to Require Defendants to Produce Documents Recently Provided to the DOJ. [Doc. No. 217 in Case No. 19-cv-1222].[1]  For the reasons set forth below, the Court grants the motion in part and denies it in part.

**I.     BACKGROUND**

Plaintiffs in *In re Cattle* and *Peterson* have asked the Court to partially lift the stay of discovery in these cases to require Defendants to produce a copy of all documents they

---

[1] Although the caption on Plaintiffs' motion and their supporting memorandum includes both the *In re Cattle* and *Peterson* cases, the motion papers were not filed in *Peterson*. The Court assumes, however, that the motion was intended to be made on behalf of Plaintiffs in both matters.

produced (or are in the process of producing) to the United States Department of Justice (DOJ) in response to civil investigative demands (CIDs) that were issued to each of the Defendants in June 2020.

On April 14, 2020, this Court issued an order allowing only limited discovery activities to move forward while Defendants' motions to dismiss were awaiting decision by the Honorable John R. Tunheim, Chief Judge, United States District Court.  The Court stayed all other discovery not specifically identified in that Order.  (*See* Order, Apr. 14, 2020 [Doc. No. 196].)  In particular, the Court denied Plaintiffs' request to require Defendants, without the need for a Rule 34 request and before the motions to dismiss were decided, to produce copies of all documents and communications exchanged with a number of regulatory bodies, including, but by no means limited to, the DOJ.[2]  In denying Plaintiffs' request, the Court found that the universe of documents requested was not "so easily identified and gathered and so clearly relevant in their entirety that they should be excepted from the parties' agreements to forgo document production pending resolution of the motions to dismiss."  (*Id.* at 3–4.)

The Court did, however, authorize the parties to serve initial Rule 34 requests for production and required that they serve written responses and objections to any such requests, followed by meet-and-confers to lay the foundation for document discovery to

---

[2] Plaintiffs' prior proposal sought, *inter alia,* various reports, communications, and productions to the U.S. Department of Agriculture, the U.S. Government Accountability Office, the Grain Inspection, Packers and Stockyards Administration, the DOJ, the U.S. Commodity Futures Trading Commission, and the relevant self-regulatory boards of the Chicago Mercantile Exchange, during the years 2014 through 2019.  *See In re Cattle*, Case No. 19-cv-1222 [Doc. No. 192-5 at 3–4].

move forward if the motions to dismiss are denied, although there would be no obligation to produce any of the documents requested until that time.  Accordingly, Plaintiffs served Rule 34 requests on June 19, 2020, seeking, *inter alia*, production of the documents and communications exchanged with the previously identified regulatory bodies.  Defendants served responses and objections to that and the other Rule 34 requests, but, consistent with the terms of the stay, have not produced any of the documents.

According to Plaintiffs, circumstances have changed since the Court's April Order staying discovery.  They argue that "there has been a veritable onslaught of pressure on the DOJ and other federal regulators by various State Attorneys General and State and Federal representatives and senators to investigate price fixing and anticompetitive behavior in the cattle industry."  (Pls.' Mem. Supp. at 2 [Doc. No. 218 in Case No. 19-cv-1222].)  In particular, the DOJ served a CID in June 2020 on each Defendant as part of its own investigation of potential antitrust violations in the beef industry.  Plaintiffs argue that since Defendants have produced, or are in the process of producing, documents in response to those CIDs, the concerns that led the Court in April to deny their previous multi-regulator, multi-year proposal can be alleviated, and the stay should be lifted specifically to accommodate a more focused demand for the documents each Defendant produced this year to the DOJ in response to that particular CID.  Essentially, therefore, Plaintiffs ask the Court to amend its April order to require Defendants to produce to Plaintiffs now (rather than after the motions to dismiss are decided and the stay presumably is lifted) the documents they have produced to the DOJ in response to the June CIDs.

3

## II.      DISCUSSION

A stay may be lifted upon a showing of good cause.  *See In re St. Jude Med., Inc.,*

*Silzone Heart Valves Prod. Liab. Litig.*, No. 01-cv-1396 (JRT/FLN), 2001 WL 1640056,

at *2 (D. Minn. Aug. 21, 2001).  Relevant factors include "the scope of the discovery, the

potential harm to the plaintiff if discovery is delayed, the potential hardship or injustice to

the defendant if discovery proceeds, and the resources of the parties and the Court."  *See*

*In re Pork Antitrust Litig.*, No. 18-cv-1776 (JRT/HB), 2019 WL 480518, at *3 (D. Minn.

Feb. 7, 2019).

Plaintiffs argue that their discovery request is narrowly tailored to a very specific

and identifiable set of documents and that the documents are clearly relevant because the

DOJ's Antitrust Division is the one that issued the CIDs, and it is investigating possible

price-fixing and violations of Section 1 of the Sherman Act.  Plaintiffs contend that,

without the discovery, they cannot keep up with developments in the governmental

investigations and as a result will be hindered in making informed decisions about

litigation strategy and settlement.  In addition, it may be several months before the

motions to dismiss are decided, and during that time, "Plaintiffs will be at a significant

information disadvantage to the Defendants and the government regulators who are not

subject to this Court's stay."  (Pls.' Mem. Supp. at 7.)  Plaintiffs further argue that since

Defendants have already, and very recently, gathered and produced the documents, there

will be minimal if any additional burden on Defendants to produce them to Plaintiffs at

this time.  And, they insist, that minimal burden on Defendants will be significantly

outweighed by the efficiencies gained by allowing Plaintiffs to start reviewing those

documents in conjunction with the upcoming meet-and-confers regarding custodians and data sources in preparation for the launch of full discovery.  Finally, Plaintiffs argue that even if Defendants' motions to dismiss are granted, the documents would be of assistance to them in preparing an amended complaint.

Defendants respond that the Court has already denied Plaintiffs' request for documents produced to government regulators, including the DOJ, and that one of the grounds for the Court's decision was that the documents were not "so clearly relevant in their entirety that they should be excepted from the parties' agreements to forgo document production pending resolution of the motions to dismiss."  (Order at 3–4.) Defendants also note that although the CIDs from the DOJ were not issued in June, they were anticipated by the parties, a fact that was brought to the Court's attention before it issued its April 2020 Order.  (Joint Status Report at 15 [Doc. No. 192].)

Perhaps most importantly, however, Defendants argue that even though the DOJ may be investigating anticompetitive activity, the CIDs swept more broadly than that, and were not limited to documents that are relevant to Plaintiffs' claims, even assuming some or all of those claims survive Defendants' motions to dismiss.  Thus, Defendants contend, the documents produced to the DOJ would not be discoverable in their entirety in this case, and accordingly would have to be reviewed for relevance.  Relatedly, Defendants complain that Plaintiffs' motion is an attempted end-run around Rules 34 and 37, essentially asking this Court to compel Defendants to produce documents outside of the regular process by which documents are to be requested, responses made, and objections raised and resolved.  Here, they argue, notwithstanding that the Court has ordered Rule

34 activity be stayed except for initial requests and written responses, Plaintiffs ask the

Court to order Defendants to produce a body of documents without regard to whether

there might be relevance or other appropriate objections to such a request under Rule 34,

and without regard to whether those objections might be upheld if a motion to compel

were brought at the appropriate time.

In addition, Defendants point out that the documents would also have to be

reviewed for confidentiality so that they could be properly designated under the

Protective Order, something Defendants did not have to do before they were produced to

the DOJ.  For all these reasons, Defendants contend that producing the documents in this

litigation would not be as simple as taking the DOJ production "off the shelf" and

handing it over to Plaintiffs.  On the other hand, Defendants did not, in their motion

papers or during oral argument, articulate a significant burden associated with the review

that would be required.  On the contrary, it appears the volume of documents at issue is

not great.  Rather, Defendants' primary argument as to burden is that the burden would

not be zero, and Plaintiffs have shown no good reason to create a new exception to the

Court's stay on document production for this or any other request that may arise in the

future.  As to possible prejudice to Plaintiffs, Defendants submit there are no concerns

about loss of evidence as the documents are being preserved and will be available for

review and production if Defendants' motions are denied and discovery moves forward.

Both sides cite cases in their favor, some in which courts have ordered the

production of documents produced to regulatory agencies investigating similar

allegations even while motions to dismiss were pending,[3] and others in which courts have, as this one did, declined to order such production until the motions were resolved.[4]

To the extent Defendants argue that this Court's April Order is dispositive of Plaintiffs' current motion, the Court disagrees. The request Plaintiffs made at that time sought a variety of productions, reports, and communications to a variety of regulators over a span of more than six years. The Court had no reason to assume that everything covered by the request was relevant nor that it was easily gathered and produced. Thus, the request was fundamentally at odds with the balance struck by the Court in the April Order as to what discovery tasks would go forward and what would be stayed while the motions to dismiss were under consideration. But at least some of those concerns are mitigated if not abrogated altogether in regard to the current request, which seeks documents produced to a single entity in response to a specific CID served within the last three months.[5] So although the Court's reasoning and overall approach in the April Order also govern here, the outcome is not necessarily the same because some of the

---

[3] *E.g.*, *In re GSE Bonds Antitrust Litig.*, Case No. 1:19-cv-1704-JSR, case management plan (S.D.N.Y. May 14, 2019), ECF No. 169; *In re Lithium Ion Batteries Antitrust Litig.*, Case No. 13-md-2420, order (N.D. Cal. May 21, 2013), ECF No. 200; *In re Platinum & Palladium Commodities Litig.*, No. 10-3617 (WHP), 2010 WL 11578945, at *1 (S.D.N.Y. Nov. 30, 2010).

[4] *E.g.*, *In re Domestic Airline Travel Antitrust Litig.*, 174 F. Supp. 3d 375, 377 (D.D.C. 2016); *In re: Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2015 WL 11022887, at *5 (W.D. Mo. Feb. 24, 2015); *In re Term Commodities Cotton Futures Litig.*, No. 12-cv-5126(ALC)(KNF), 2013 WL 1907738, at *7 (S.D.N.Y. May 8, 2013).

[5] As for Defendants' argument that the CIDs were anticipated back in April, they had not been issued and there was no call from either Plaintiffs or Defendants for the Court to speculate about how it might view a demand that Defendants produce a set of documents that might at some point be produced to one specific agency who had not even asked for them yet.

circumstances have changed.  The question now, therefore, is whether the new circumstances present good cause to come to a different conclusion.

The Court finds that they do, but not to the full extent sought by Plaintiffs.  Rule 26(b)(1) provides that the scope of permissible discovery is "any nonprivileged matter that is *relevant to any party's claim or defense* and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  Plaintiffs have not persuaded the Court that they are entitled to do an end-run around either Rule 26 or Rule 34 simply by asking for documents produced to a government regulator, even if that regulator is investigating similar claims to those advanced by Plaintiffs.  Therefore, the Court will deny Plaintiffs' motion insofar as it seeks a wholesale production of all documents produced to the DOJ without regard to relevance.  The Court has no basis to conclude *at this time* that all documents produced to the DOJ in response to the June CIDs are relevant and therefore discoverable in these cases simply because the DOJ requested them and Defendants felt compelled to produce them.

However, the comparative burden and benefit *have* changed since the Court's April Order.  Because the documents have already been gathered and organized for production to the DOJ, because the great majority of those documents are highly likely to be relevant to Plaintiffs' claims and to be of assistance in the discovery-related tasks the Court authorized in its April Order, and in view of the absence of any showing that reviewing that group of documents for relevance and confidentiality would impose a significant incremental burden on any Defendant, the Court will order Defendants to review the documents they produced to the DOJ in response to the June 2020 CIDs and to

produce to Plaintiffs all non-privileged documents that are relevant to any of Plaintiffs' claims in these cases.  In reviewing the documents for relevance, Defendants shall operate on the assumption that their motions to dismiss will be denied in their entirety. Defendants may, of course, appropriately designate the documents for confidentiality (or lack thereof) under the Protective Order.

In ordering this limited production, the Court does *not* signal a willingness to entertain a recurring drip of motions seeking to erode the April Order and the stay of discovery.  Furthermore, if Plaintiffs are not satisfied with the relevance assessment of Defendants, they are encouraged to meet and confer with Defendants in an effort to resolve those concerns, and Defendants are expected to respond in good faith, but the Court will not entertain a motion to compel further production of the documents produced to the DOJ until such time as Defendants' motions to dismiss are denied in whole or in part and the stay of discovery in these cases is lifted.

Accordingly, Plaintiffs' Motion to Narrowly Lift the Discovery Stay to Require Defendants to Produce Documents Recently Provided to the DOJ [Doc. No. 217 in Case No. 19-1222] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

Dated: September 10, 2020                    *s/ Hildy Bowbeer*
                                             HILDY BOWBEER
                                             United States Magistrate Judge