# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE CATTLE ANTITRUST LITIGATION<br><br>This document relates to:<br><br>ALL CASES | Case No. 0:19-cv-1222-JRT-HB |
| PETERSON, et al.,<br>　　　　　　　　　Plaintiffs,<br>　v.<br>JBS S.A., et al.,<br>　　　　　　　　　Defendants. | Case No. 0:19-cv-01129-JRT-HB |
| IN RE DPP BEEF LITIGATION<br><br>This document relates to:<br><br>ALL CASES | Case No. 0:20-cv-1319-JRT-HB |
| ERBERT & GERBERT'S, INC.,<br>　　　　　　　　　Plaintiff,<br>　v.<br>CARGILL, INC., et al.,<br>　　　　　　　　　Defendants. | Case No. 0:20-cv-01414-JRT-HB |

**JBS S.A.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE ALTERNATIVE SERVICE ON JBS S.A.**

## Introduction

Plaintiffs' motion for alternative service on JBS S.A. should be denied. Plaintiffs request leave to serve JBS S.A. by email and hand delivery to its U.S. counsel. But the relevant Federal Rules of Civil Procedure only authorize service "at a place not within any judicial district of the United States . . . by other means *not prohibited by international agreement*, as the court orders." Fed. R. Civ. P. 4(f)(3) & (h)(2) (emphasis added). Plaintiffs cannot satisfy that Rule. The Hague Service Convention ("Service Convention") took effect in Brazil on June 1, 2019, and—contrary to Plaintiffs' assertions—prohibits the type of alternative service that Plaintiffs request.

The Service Convention, as effective between the United States and Brazil, requires Plaintiffs to pursue service through Brazil's Central Authority. The Service Convention recites options, including service by postal channels, that only apply if a country does not object. But those options do not apply, because Brazil specifically objected to them. The Service Convention also provides that nations can agree between themselves on other methods of service. But that does not apply, either, because the United States and Brazil have not agreed to any other means of service. Thus, the Service Convention prohibits the email and hand delivery service Plaintiffs are requesting.

Plaintiffs' arguments that the Service Convention permits the alternative service they request misreads *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002), where there was no question that the Service Convention did not apply. Plaintiffs' arguments also conflict with the Supreme Court's reasoning in *Water Splash*, *Inc. v. Menon*, 137 S. Ct. 1504 (2017), which reaffirmed that the Service Convention specifies

2

approved methods of service and preempts inconsistent methods. *Id*. at 1507. Several recent opinions rejecting arguments for alternative service when the Service Convention applies show the flaws in Plaintiffs' arguments. *See Gonzalez v. US Human Rights Network*, 2021 WL 86767, at *15-16 (D. Ariz. Jan. 11, 2021); *Prem Sales, LLC v. Guangdong Chigo Heating*, 2020 WL 6063452, at *4-10 (N.D. Tex. Oct. 14, 2020); *Facebook, Inc. v. 9 XIU Network (Shenzhen) Tech. Co., Ltd.*, 480 F. Supp. 3d 977, 980-88 (N.D. Cal. 2020); *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 469-72 (D. Mass. 2020); *see also* Maggie Gardner, *Parochial Procedure*, 69 Stan. L. Rev. 941, 995-1003 (2017). As that authority shows, the type of alternative service that Plaintiffs request is prohibited by the Service Convention.

Besides wrongly arguing that the Service Convention allows service by mail and hand delivery, Plaintiffs argue that (1) the Service Convention does not apply because Plaintiffs only propose to effect service by transmitting papers within the United States and (2) complying with the Service Convention would substantially delay the proceedings. But Plaintiffs cannot brush aside the requirements of international law by claiming that their proposal is merely a domestic issue. Plaintiffs try to do so by relying on *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988), claiming that it held the Service Convention does not apply when a plaintiff sends service domestically. But in *Schlunk*, it was undisputed that the "service on a domestic agent" was "***valid and complete.***" *Id.* at 707 (emphasis added). Here, in contrast, it is undisputed that the U.S. counsel for JBS S.A. are not authorized to accept service for JBS S.A., so service on them *could not* be valid and complete. *See* Rashid and Brookhouser

3

Declarations; *see also* ECF No. 358 (Plaintiffs' Brief).[1] Thus, Plaintiffs' reliance on *Schlunk* is misplaced, and Plaintiffs must follow the Service Convention consistent with Federal Rules of Civil Procedure 4(f)(1) & (h)(2).

Plaintiffs' arguments about delay also fall short, especially because Plaintiffs have not tried to serve JBS S.A. through Brazil's Central Authority consistent with the Service Convention. The *Peterson* and DPP Plaintiffs have not even attempted any type of service. And *Cattle* Plaintiffs have only attempted purported service by certified mail and hand delivery in May 2019, before the Service Convention went into effect. That purported service in the *Cattle* case is ineffective for reasons stated in JBS S.A.'s Motion to Dismiss. Following the Service Convention will not cause undue delay. Rather, as the advisory committee notes to Federal Rule of Civil Procedure 4 state, the Service Convention and the Federal Rules of Civil Procedure allow a plaintiff to seek alternative service if a Central Authority does not complete service within six months. *See* Fed. R. Civ. P. 4 advisory committee's notes to 1993 amendments. Because Plaintiffs have not even taken steps to *start* the six-month period, Plaintiffs are in no position to complain about delay.

## Argument

**I. The Service Convention Governs Service Abroad in Brazil After June 1, 2019.**

The Service Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service

---

[1] Citations to filings use the ECF No. in the *Cattle* case.

4

abroad." *Water Splash*, 137 S. Ct. at 1509 (2017) (quoting Hague Service Convention Art. 1) (emphasis from *Water Splash* removed). The Service Convention took effect in the United States on February 10, 1969. *See* Fed. R. Civ. P. 4 advisory committee's notes to 1993 amendment. And it took effect in Brazil on June 1, 2019.[2] The Service Convention therefore governs service in Brazil after June 1, 2019, arising from lawsuits in the United States.

The Federal Rules of Civil Procedure authorize service using the Service Convention. The Rules do so by providing for service by "internationally agreed means." Fed. R. Civ. P. 4(f)(1) & 4(h)(2). In describing internationally agreed means, the Rules specifically refer to the Service Convention. *See id*.

## II.  Plaintiffs Must Comply With The Service Convention.

As the Supreme Court has explained, "compliance with the [Service] Convention is mandatory in all cases to which it applies." *Schlunk*, 486 U.S. at 705. The advisory committee notes to Federal Rule of Civil Procedure 4 also explain that the Service Convention's provisions are mandatory, explaining that the "[u]se of the Convention procedures, when available, *is mandatory* if documents must be transmitted abroad to effect service." Fed. R. Civ. P. 4 advisory committee note to 1993 amendment (emphasis added).

Not only is the Service Convention mandatory, but it is exclusive. In the Supreme Court's words, "the Hague Service Convention specifies certain approved methods of

---

[2] *See* https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last accessed April 27, 2021).

service and 'preempts inconsistent methods of service' wherever it applies." *Water Splash,* 137 S. Ct. at 1507 (quoting *Schlunk*, 486 U.S. at 699). That exclusivity is fatal to Plaintiffs' arguments for alternative service because Plaintiffs are seeking to avoid the Service Convention.

The Service Convention specifies only one approved method for service in Brazil: service by the Central Authority. *See* Service Convention Art. 2.[3] The Service Convention provides other options, including service through postal channels, that only apply if a country does not object to them.[4] But those options do not apply, because Brazil expressly objected to them when it ratified the Service Convention.[5] *See Schlunk*, 486 U.S. at 699 (stating that a signatory country "also may consent to methods of service within its boundaries other than a request to its central authority").

Plaintiffs cannot avoid the Service Convention's requirements by arguing that the Service Convention does not refer to service by email. Plaintiffs cite some authority incorrectly concluding that the Service Convention does not prohibit email service,

---

[3] https://www.hcch.net/en/instruments/conventions/full-text/?cid=17 (last accessed April 27, 2021).

[4] Those options include through "diplomatic or consular agents," Art. 8, through "postal channels, directly to persons abroad," Art. 10(a), and through "judicial officers, officials, or other competent persons of the State of destination," Art. 10(b) & (c). https://www.hcch.net/en/instruments/conventions/full-text/?cid=17 (last accessed April 27, 2021).

[5] Brazil declared that it is "opposed to the use of the methods of transmission of judicial and extrajudicial documents provided for in Article 8 of the Convention." Brazil also declared that it "is opposed to the methods of transmission of judicial and extrajudicial documents provided for in Article 10 of the Convention." *See* Declarations/Reservations https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=1399&disp=resdn (last accessed April 27, 2021).

because it does not refer to email service. *See, e.g.*, *Fourte Intl'l Ltd. BVI v. Pin Shine Indus. Co., Ltd.*, 2019 WL 246562, at *2-3 (S.D. Cal. Jan. 17, 2019). But as recent, better-reasoned authority shows, the Service Convention's silence on email service does not mean it permits email service. The opposite is true. The Service Convention's failure to specify email as an approved method of service means that email service is prohibited. "There is no reason for a nation to affirmatively object to a service method that is not authorized or identified because the Convention 'specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies.'" *Prem Sales, LLC v. Guangdong Chigo Heating and Ventilation Equip. Co.*, 2020 WL 6063452, at *7 (N.D. Tex. Oct. 14, 2020) (quoting *Water Splash*, 137 S. Ct. at 1507); *see also Facebook*, 480 F. Supp. 3d at 987 (concluding that "'[s]ervice by e-mail on defendants in China is not one of the Hague Service Convention's approved methods of service," and "[t]hus, unless an exception to the Convention applies, service by e-mail on the China-based defendants" is prohibited); *Anova*, 334 F.R.D. at 472 (holding "e-mail service on [foreign] defendants is prohibited by the Hague Convention); Maggie Gardner, *Parochial Procedure*, 69 Stan. L. Rev. 941, 1000 (2017) (stating that "unless the Convention does not apply by its own terms, any method of service not approved by the Convention is effectively prohibited").

The conclusion that the Service Convention prohibits email service aligns with the Supreme Court's admonition that "the Hague Service Convention specifies certain approved methods of service and 'preempts inconsistent methods of service' wherever it applies." *Water Splash,* 137 S. Ct. at 1507 (quoting *Schlunk*, 486 U.S. at 699). Thus, the

7

Service Convention preempts and thereby prohibits methods such as email service, because it does not specifically approve them.

Plaintiffs also rely on cases that misinterpret language from *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002).[6] The court in *Rio* was analyzing service on a defendant in Costa Rica, which is not a signatory to the Service Convention. *See id*. at 1012-14. In that context, the court in *Rio* stated that Federal Rule of Civil Procedure 4(f)(3), in authorizing alternative service, "includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means." *Id*. at 1015. Plaintiffs here rely on *Rio* to argue that they can circumvent the Service Convention by proceeding directly to alternative service under Fed. R. Civ. P. 4(f)(3). *See* ECF No. 358 at 5. "This reading of *Rio*, although understandable, is too expansive." *Facebook*, 480 F. Supp. 3d at 985. "*Rio* interpreted Rule 4(f), not the Hague Service Convention, and when the Convention applies, it must be considered." *Facebook*, 480 F. Supp. 3d at 985. When the Service Convention applies, therefore, it is incorrect to suggest that a plaintiff can rely on the alternative service rules to avoid the Service Convention. *See id.*; *see also* Gardner, 69 Stan. L. Rev. at 999 (stating that it is incorrect to rely on *Rio* "to conclude that, even when the Service Convention *does* apply, plaintiffs can immediately invoke Rule 4(f)(3) to seek approval to serve foreign defendants through less formal means, like e-mail or Facebook") (emphasis in original).

---

[6] *See, e.g., Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013); *Knit With v. Knitting Fever*, 2010 WL 4977944, at *3 (E.D. Pa. Dec. 7, 2010).

When quoting *Rio*, Plaintiffs add language to the quotation in brackets referring to the Service Convention. *See* ECF No. 358 at 5 (quoting *Rio* as saying that "court-directed service under Rule 4(f)(3) is as favored as [Hague Convention] service available under Rule 4(f)(1)") (brackets by Plaintiffs in their Brief). But if Plaintiffs mean to suggest that the quote from *Rio* referred to the Hague Convention, that is incorrect. To the contrary, immediately after the quoted reference to Rule 4(f)(1), the Court in *Rio* dropped the following footnote:

> ***A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1).*** The parties agree, however, that the Hague Convention does not apply in this case because Costa Rica is not a signatory.

*Rio*, 284 F.3d at 1015 n.4 (emphasis added).

Given that footnote, one court determined that *Rio* "does not suggest (and if anything, rejects the notion) that it is permissible under Rule 4(f)(3) to authorize service upon a Swiss resident via the U.S.-based counsel." *Gonzalez v. US Human Rights Network*, 2021 WL 86767, at *15 (D. Ariz. Jan. 11, 2021). That was because Switzerland was a signatory to the Service Convention. *Id*. at *15-16. That same conclusion applies here. Plaintiffs therefore cannot argue that they can use alternative service to avoid the Service Convention.

**III.   Plaintiffs Cannot Avoid the Service Convention by Arguing That Their Proposed Service Does Not Involve Service of Process Abroad.**

Plaintiffs incorrectly suggest that their "two proposed methods of service—personal service and service via e-mail on JBS S.A.'s U.S.-based counsel—do not

9

implicate the Hague Convention or Brazil's objections because they do not involve service of process abroad." ECF No. 358 at 6. In support of their contention, Plaintiffs refer to an incomplete quotation from *Schlunk*. ECF No. 358 at 6-7. But Plaintiffs ignore a crucial distinction between this case and *Schlunk*, revealed by the part of the quotation from *Schunk* that Plaintiffs omit.

Plaintiffs' Brief quotes *Schlunk* as follows: "Where service on a domestic agent is valid …. our inquiry ends and the Convention has no further implications." ECF No. 358 at 6-7 (citing *Schlunk*, 486 U.S. at 70[7]). Plaintiffs use that partial quotation to suggest that if the Court were to approve service on counsel here, the Service Convention would not apply.

But including the part of the quotation that Plaintiffs omit changes its meaning entirely. That quotation—with the part omitted by Plaintiffs highlighted—states: "Where service on a domestic agent is valid **and complete under both state law and the Due Process Clause**, our inquiry ends and the Convention has no further implications." *Schlunk*, 486 U.S. at 707 (emphasis added). The highlighted part of the quotation is crucial; the Court held in *Schlunk* that service did not require transmittal of documents abroad because service was valid and complete under state law on a domestic subsidiary. *See id*. at 706-07. But that rule does not apply here. Rather, it is undisputed that the U.S. counsel for JBS S.A. are not authorized to accept service for JBS S.A. *See* Rashid and Brookhouser Declarations; *see also* ECF No. 358 (Plaintiffs' Brief). Service on them consequently would not be valid and complete. So service on them would not fall within the rule from *Schlunk* about completed service on a domestic agent. *See, e.g.*, *Gonzalez*,

10

2021 WL 86767, at *16 (rejecting motion for leave to effect alternative service and concluding that "Plaintiff has not demonstrated that [Defendant's] counsel is her domestic agent or offered any other basis for disregarding the Hague Convention"). Other cases also have rejected attempts to serve a foreign defendant through U.S. counsel. *See, e.g.*, *Halvorssen v. Simpson*, 328 F.R.D. 30, 35 (E.D.N.Y. 2018); *Marcantonio v. Primorsk Shipping Corp.*, 206 F. Supp. 2d 54, 59 (D. Mass. 2002); *Trask v. Serv. Merch. Co.*, 135 F.R.D. 17, 22 (D. Mass. 1991) ("Service upon defendants' attorney in the United States does not meet the requirements set forth in the Hague Convention.")

Indeed, even one case that Plaintiffs cite recognizes that alternative service on a U.S. counsel under similar circumstances is not a domestic matter outside the ambit of international agreement. That is because "the relevant circumstance is where the defendant is, and not the location of the intermediary." *Washington State Inv. Bd. v. Odebrecht S.A.*, 2018 WL 6253877, at *4 (S.D.N.Y. Sept. 21, 2018). Further, that case presented different issues than those here, because it was decided before Brazil adopted the Service Convention and instead adhered to the Inter-American Convention. *See id*. at *4-5. That Inter-American Convention "does not prohibit service on Defendant" through U.S. counsel. *Id.* at *5. But as shown above, the Service Convention does prohibit that type of service. Plaintiffs' reliance on *Odebrecht* is therefore misplaced.

Plaintiffs cite other cases that are not persuasive because they do not meaningfully analyze whether the service is complete in the United States. In several of those cases, the court did not need to focus on that issue, because the case involved a Brazilian Defendant before Brazil enacted the Service Convention. *See Walsh v. Denis*, 2017 WL 819957, at

\*3 (D. Conn. Mar. 2, 2017); *In re Petrobas Securities Litig.*, 2015 WL 10846515, at \*1 (S.D.N.Y. Nov. 2, 2015); *Russell Brands, LLC v. GVD Int'l Trading, SA*, 282 F.R.D. 21, 24-25 (D. Mass. 2012); *Lyman Morse Boatbuilding Co., Inc. v. Lee*, 2011 WL 52509, at \*3 (D. Me. Jan. 6, 2011). In other cases, the courts did not need to focus on the issue because defendants were in countries where the Service Convention did not apply. *See 1st Tech. v. Digital Gaming Solutions S.A.*, 2008 WL 4790347, at \*7 (E.D. Mo. Oct. 31, 2008) (Costa Rica); *see also SA Luxury Expeditions, LLC v. Latin America for Less, LLC*, 2015 WL 4947192, at \*2 (N.D. Cal. Aug. 19, 2015) (Peru).

In still other cases, courts did not need to focus on where the service was complete, because the cases involved defendants in Russia when it was refusing to accept requests under the Service Convention. *See Arista Records, LLC v. Media Services LLC*, 2008 WL 563470, at \*1 n.4 (S.D.N.Y. Feb. 25, 2008) (explaining that Federal Rule of Civil Procedure 4's 1993 advisory committee notes provide examples in which alternative service was proper if a Central Authority refused to serve a complaint); *see also Fraserside IP LLC v. Letyagin*, 280 F.R.D. 630, 631 (N.D. Iowa 2012); *RSM Prod. Corp. v. Fridman*, 2007 WL 2295907, at \*6 (S.D.N.Y. Aug. 10, 2007). And in several cases the defendant's address was unknown, but in that situation, the Service Convention says it does not apply. *See List v. Carwell*, 2018 WL 6787662, at \*3 (D. Minn. Dec. 26, 2018) (stating that the Service Convention does "not apply where the address of the person to be served with the document is not known") (quoting the Service Convention); *see also S.E.C. v. Anticevic*, 2009 WL 361739, at \*1-2 (S.D.N.Y. Feb. 13, 2009) (plaintiff

had attempted service under the Service Convention on a defendant in both Germany and Croatia, but both attempts were unsuccessful because his address was unknown).

Plaintiffs rely heavily on a distinguishable case, *GLG Life Tech. Corp. Securities Litig.*, 287 F.R.D. 262 (S.D.N.Y. 2012). In that case, the plaintiff had successfully served a company's CFO in Canada under the Service Convention, and it unsuccessfully attempted service on the company's CEO (a Canadian citizen) under the Service Convention in Canada. *Id*. at 263-64. Plaintiffs' attempt to serve the CEO was delayed for months because the company withheld the CEO's address in China, and plaintiff could not locate it. *Id*. at 265-68. That case therefore is nothing like this one. Plaintiffs here have never tried to serve JBS S.A. under the Service Convention, and they have known its address for years.

Nor can Plaintiffs salvage their motion by arguing that alternative service somehow could be made on JBS S.A.'s U.S. counsel even though it is undisputed that those counsel are not authorized to accept service. The Federal Rules governing alternative service do not authorize service in the United States. They instead only authorize alternative service "at a place not within any judicial district of the United States." Fed. R. Civ. P. 4(f) & (h)(2). Alternative service thus cannot be completed under that Rule in the United States. *See*, *e.g., Codigo Music, LLC v. Televisia S.A. de C.V.*, 2017 WL 4346968, at *13 (S.D. Fla. Sept. 29, 2017); *In re Auto. Parts Antitrust Litig.*, 2017 WL 10808851, at *2 (E.D. Mich. Nov. 2, 2017); *Drew Techs., Inc. v. Robert Bosch, L.L.C.*, 2013 WL 6797175, at *1-4 (E.D. Mich. Oct. 2, 2013). And Plaintiffs have suggested no other basis for their requested email service or hand delivery on counsel.

13

## IV. The Service Convention Permits Plaintiffs to Request Alternative Service if There is Undue Delay After They Attempt Service Under The Service Convention.

The advisory committee notes to Federal Rule of Civil Procedure 4 explain that a plaintiff may request alternative service under Rule 4(f)(3) if a Central Authority does not effect service within six months after receiving a request. As those notes state:

> The Hague Convention does not specify a time within which a foreign country's Central Authority must effect service, but Article 15 does provide that alternate methods may be used if a Central Authority does not respond within six months. Generally, a Central Authority can be expected to respond much more quickly than that limit might permit, but there have been occasions when the signatory state was dilatory or refused to cooperate for substantive reasons. In such cases, resort may be had to the provision set forth in subdivision (f)(3).

Federal Rule of Civil Procedure 4, advisory committee's notes to 1993 amendment.

The court discussed that advisory committee note in *Patrick's Restaurant, LLC v. Singh*, 2018 WL 5307839 (D. Minn. Oct. 26, 2018). In that case, the court said it had been seven months since the plaintiff started service under the Service Convention. *Id*. at *2-3.[7] That case is unlike this one, because Plaintiffs here have not attempted service under the Service Convention.

---

[7] The opinion also relied on an overly expansive reading of *Rio* discussed above, and it failed to give weight to the Supreme Court's reasoning from *Water Splash*. *See Patrick's Restaurant*, 2018 WL 5307839, at *2-3. But those issues are largely beside the point, because the plaintiff in *Patrick's Restaurant* had attempted service under the Service Convention and had been unsuccessful after seven months. Nothing comparable has happened here. To the extent those points do matter, the way that the court in *Patrick's Restaurant* disregarded the Supreme Court's reasoning as dicta conflicts with the Eighth Circuit's guidance on how to interpret Supreme Court cases. *See In re Pre-Filled Propane*

This case is also unlike other cases Plaintiffs cite in which a plaintiff attempted service under the Service Convention. *Ackerman v. Global Vehicles U.S.A., Inc.*, 2011 WL 3847427, at *3 (E.D. Mo. Aug. 26, 2011); *LG Electronics, Inc. v. Asko Appliances, Inc.*, 2009 WL 1811098, at *4 (D. Del. June 23, 2009).

Plaintiffs cite two cases that cut against them. In both of those cases, the plaintiffs had not attempted service under the Service Convention, and the courts *rejected* arguments for alternative service. *See Night Owl SP, LLC v. Dongguan Auha Elect. Co., Ltd.*, 2020 WL 8768259, at *2-5 (M.D. Fla. Sept. 9, 2020); *American Express Co. v. Xiongwen Rui*, 2019 WL 1858101, at *3 (D. Ariz. April 25, 2019). As the court emphasized in one of those cases, a plaintiff cannot complain about "self-created delay." *American Express*, 2019 WL 1858101, at *3. That conclusion applies with full force here.

Plaintiffs' evidence about their process server's attempts to effect service under the Service Convention in other lawsuits therefore misses the mark. That process server states that one request sent in December 2019 was served, with proof of service received ten months after the request arrived in Brazil. ECF No. 359 ¶ 12. He refers to requests sent in October and November 2020, *see id.* ¶ 12(D) & (E), but six months had not passed as to either of those when he submitted his declaration on March 30, 2021. He refers to three other requests, but he does not provide any identifying case information as

---

*Tank Antitrust Litig.*, 860 F.3d 1059, 1064 (8th Cir. 2017) (stating that "[a]ppellate courts should afford deference and respect to Supreme Court dicta, particularly where, as here, it is consistent with longstanding Supreme Court precedent").

15

to any of them. *See id.* ¶ 12(A)-(C). Nor does he indicate whether plaintiffs in any of those lawsuits sought alternative service after six months passed. *See id.* He goes on the speculate that the Central Authority in Brazil will continue to suffer from delays. *See id.* ¶ 15. But there is no indication that Plaintiffs' process server's examples are representative of all attempts to serve entities in Brazil via the Service Convention. Finally, the process server ends by declaring that attempting to "re-serve" JBS S.A. would incur over $15,000 in fees. *Id.* ¶ 16. But no Plaintiff group has attempted to serve JBS S.A. under the Service Convention, and nearly all of the fees ($14,000) are attributed to "certified translation." *Id.* Regardless of whether Plaintiffs' process server might have experienced delays in service in other cases, that does not excuse Plaintiffs from even trying to effect service under the Service Convention.

## Conclusion

The Service Convention is an international treaty that cannot be brushed aside because Plaintiffs—the ones who have caused any delay here—view it as an inconvenience. Their request conflicts with the Service Convention, Supreme Court precedent, the Federal Rules of Civil Procedure, and the advisory committee notes to those Rules.

For the foregoing reasons, JBS S.A. respectfully submits that Plaintiffs' Motion requesting alternative service should be denied.

Dated: April 27, 2021

| | |
|---|---|
| */s/ Christopher R. Morris* | */s/ Randi J. Winter* |
| Lewis A. Remele, Jr. (#90724) | Donald G. Heeman (#0286023) |
| Christopher R. Morris (#230613) | Jessica J. Nelson (#0347358) |
| BASSFORD REMELE, PA | Randi J. Winter (#0391354) |
| 100 South 5th Street, Suite 1500 | SPENCER FANE LLP |
| Minneapolis, MN 55402 | 100 South Fifth Street, Suite 2500 |
| Telephone: (612) 333-3000 | Minneapolis, MN 55402 |
| lremele@bassford.com | Telephone: (612) 268-7000 |
| cmorris@bassford.com | dheeman@spencerfane.com |
| | jnelson@spencerfane.com |
| William F. Hargens (*pro hac vice*) | rwinter@spencerfane.com |
| Mark F. Enenbach (*pro hac vice*) | |
| Patrick E. Brookhouser, Jr. (*pro hac vice*) | Stephen Neuwirth (*pro hac vice*) |
| Matthew G. Munro (*pro hac vice*) | Sami H. Rashid (*pro hac vice*) |
| MCGRATH NORTH MULLIN & KRATZ, PC LLO | QUINN EMANUEL URQUHART & SULLIVAN LLP |
| First National Tower, Suite 3700 | 51 Madison Avenue, 22nd Floor |
| 1601 Dodge Street | New York, NY 10010 |
| Omaha, NE 68102 | Telephone: (212) 849 7000 |
| Telephone: (402) 341-3070 | stephenneuwirth@quinnemanuel.com |
| whargens@mcgrathnorth.com | samirashid@quinnemanuel.com |
| menenbach@mcgrathnorth.com | |
| pbrookhouser@mcgrathnorth.com | *Counsel for Defendants JBS USA Food Company Holdings, JBS Packerland, Inc. and Swift Beef Company, and Special Appearance for JBS S.A., in the Peterson, DPP and Erbert & Gerbert's cases* |
| mmunro@mcgrathnorth.com | |
| | |
| *Counsel for Defendants JBS USA Food Company, JBS Packerland, Inc., and Swift Beef Company, and Special Appearance for JBS S.A., in the Cattle case* | |